# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### April 7, 2004 Session

## IN THE MATTER OF: D.A.H., DOB 12/11/00, A CHILD UNDER EIGHTEEN (18) YEARS OF AGE, ET AL.

**Appeal by permission from the Court of Appeals, Western Section**
**Juvenile Court for Shelby County**
**No. M7027   Harold Horne, Judge**

---

**No. W2002-00733-SC-R11-JV - Filed August 27, 2004**

---

We granted permission to appeal to determine whether the amendment to Tennessee Code Annotated section 36-1-113(g)(9)(A), effective June 2, 2003, applies retroactively to this parental termination case. Prior to the 2003 amendment, Tennessee Code Annotated section 36-1-113(g)(9)(A) (2001) provided as follows: "[t]he parental rights of any person who is not the legal parent or guardian of a child or who is described in § 36-1-117(b) or (c) may also be terminated based upon any one (1) or more of the following additional grounds . . . ." This Court explained in Jones v. Garrett, 92 S.W.3d 835 (Tenn. 2002), that the grounds for termination of parental rights under the 2001 statute did not apply to persons who had established parentage prior to the termination hearing. This provision was, however, amended and now reads as follows:

> The parental rights of any person who, *at the time of the filing of a petition to terminate the parental rights of such person or, if no such petition is filed, at the time of the filing of a petition to adopt a child*, is not the legal parent or guardian of such child or who is described in § 36-1-117(b) or (c) may also be terminated based upon any one (1) or more of the following additional grounds . . . .

Tenn. Code Ann. § 36-1-113(g)(9)(A) (Supp. 2003) (emphasis added).

Because the right of a legal parent to the care and custody of his or her child had vested under the 2001 statute, construed in Jones, we hold that the amended version of Tennessee Code Annotated section 36-1-113(g)(9)(A) may not be retroactively applied to this case. Thus, the 2001 statute applies. Further, we conclude that the allegations of abandonment in the petition for termination are without merit. Accordingly, we affirm the judgment of the Court of Appeals vacating the trial court's order terminating the parental rights of Timothy Wayne Cope. The case is remanded to the Juvenile Court for Shelby County for further proceedings.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed; Case Remanded to the Juvenile Court for Shelby County**

ADOLPHO A. BIRCH, JR., J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

Kevin W. Weaver, Cordova, Tennessee, for the appellant, Mid-South Christian Services, Inc.

Claiborne H. Ferguson, Memphis, Tennessee, for the appellee, Timothy Cope.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and Douglas Earl Dimond, Assistant Attorney General, Nashville, Tennessee, for the Intervenor, Attorney General.

**Opinion**

I.  Facts and Procedural History

D.A.H.[1] was born on December 11, 2000, in Memphis, Tennessee, to unmarried parents. Several months before D.A.H. was born, the mother, Cynthia Ann Honeycutt, and the father, Timothy Wayne Cope, moved from Memphis, Tennessee, to Pensacola, Florida. However, Honeycutt retained their apartment in Memphis and continued to receive her prenatal care there.

Cope was informed of Honeycutt's pregnancy during the first trimester. When they lived in Memphis, Cope accompanied Honeycutt to her medical appointments. The couple shared living expenses. Although Honeycutt's insurance had covered most of the prenatal expenses, Cope contributed to the portion not covered by insurance. He also stated that he had paid many of their expenses when they moved to Florida.

Cope was not present at D.A.H.'s birth, but he spoke with Honeycutt by telephone from his home in Florida after the birth. The birth certificate did not identify the father.[2] Honeycutt returned to Pensacola without D.A.H. on December 15, 2000, and she told Cope that D.A.H. had an infection and was still in the hospital. Upon D.A.H.'s discharge from the hospital on December 18, 2000, however, Honeycutt placed D.A.H. with her cousin and her cousin's spouse ("adoptive family") with the intention that the couple adopt D.A.H. Cope was unaware of Honeycutt's intentions or actions at the time.

On December 19, 2000, Honeycutt entered into an interim foster care agreement with Mid-South Christian Services, Inc., a private adoption agency hired by the adoptive family to facilitate the adoption. Because the adoptive family lived in Kentucky, Mid-South had advised them that

---

[1]Consistent with this Court's policy, we refer to children in parental termination cases by their initials.

[2]Because they were not married, Cope's name was not placed upon the birth certificate. According to Tennessee Code Annotated section 68-3-305(b) (2004), the father's name may not be placed on the birth certificate if the parents are unmarried unless the parents submit a signed sworn statement indicating he is the father.

D.A.H. would have to be placed in Mid-South's foster care program until interstate approval of the adoption could be obtained.

Meanwhile, Cope confronted Honeycutt regarding why she had not brought D.A.H. home. He stated that she told him that she was being forced by her mother and her aunt to give D.A.H. up for adoption.

On January 3, 2001, Cope and Honeycutt telephoned Mid-South from Memphis and expressed a desire to parent their child. Cope also told Mid-South that he would like to see his child. Cope was told by Mid-South that he owed $600 for the foster care placement and that he would have to file papers with the court to gain custody of D.A.H. Although arrangements were in place for Cope and Honeycutt to visit the child that afternoon, neither parent appeared at the agency. Cope explains that as he was on his way to visit D.A.H., Honeycutt's family came to their apartment, threatened Cope, and followed his car. This conduct, he says, prevented him from visiting D.A.H. without an altercation. He also believed that Mid-South had made efforts to prevent the visit from occurring.

On January 10, 2001, Honeycutt, then with Cope in Florida, telephoned Mid-South and stated that she did not feel able to parent D.A.H. and that Cope would not agree to the adoption. The couple again went to Memphis on February 5, 2001; Honeycutt told Cope that she would go to Mid-South and get the baby. Instead, Mid-South assisted Honeycutt in presenting a voluntary surrender of her parental rights before the Juvenile Court on that very day. On the surrender form, she named Cope as the father. Although she admitted at the hearing that she still lived with Cope, she claimed not to know his address.

On February 20, 2001, Honeycutt telephoned Mid-South to ask about D.A.H., and she visited him on March 12, 2001. Honeycutt continued to conceal Cope's address or phone number from Mid-South. In order to locate Cope, Mid-South hired a private investigator. This effort was not successful. Honeycutt finally revealed to Cope that she wanted to surrender D.A.H., and she asked Cope to sign a document relinquishing his parental rights. He refused to sign the document and immediately severed his relationship with Honeycutt.[3] Honeycutt finally informed Mid-South of Cope's address.

When the adoptive family's attorney contacted Cope, he learned where D.A.H. was living, and on March 20, 2001, Cope telephoned Mid-South and asked the director of the agency what he needed to do to gain custody of D.A.H. At some point, Cope also went to the juvenile court building in Memphis to determine how to proceed; he was told to hire an attorney. Cope contacted attorneys, but he could not afford to hire one. On March 29, 2001, nine days after Cope had contacted Mid-

---

[3]At the time of the hearing on December 17, 2001, Cope testified that Honeycutt and Cope were living together in Florida.

South to pursue custody of his child, Mid-South filed a petition to terminate Cope's parental rights.[4] D.A.H. was three months old at the time. On this same date, Honeycutt visited D.A.H. On April 4, 2001, following the approval under the Interstate Compact for placement of the child in Kentucky, D.A.H. was placed with the adoptive family in Kentucky. Cope was personally served with a copy of Mid-South's petition seeking to terminate his parental rights on April 10, 2001.

An initial hearing on the termination petition was held on May 9, 2001, and Cope requested a deoxyribonucleic acid ("DNA") test to establish paternity. The court appointed legal counsel for Cope. A report was issued indicating that the DNA testing established by a 99.999 percent probability that Cope is the father of D.A.H. On September 5, 2001, Cope filed a petition to establish parentage. He also sought visitation with D.A.H. which was denied by Mid-South. On October 4, 2001, Honeycutt signed a consent order naming Cope as the father of the child; on December 4, 2001, the juvenile court judge confirmed the consent order establishing parentage and making Cope a "legal parent." A hearing was held regarding the termination petition on December 17, 2001.

The juvenile court found that the evidence supported several grounds for termination applicable to those who are not legal parents. See, e.g., Tenn. Code Ann. § 36-1-113(g)(9) (1999). Specifically, the court found: 1) Cope failed to seek reasonable visitation with the child; 2) Cope failed to manifest an ability and willingness to assume legal and physical custody of the child; and 3) Cope failed to file a petition to legitimate his child within 30 days of the child's birth.[5] The juvenile court entered a written order terminating Cope's parental rights on these three grounds. Cope appealed this decision.

Relying on Jones v. Garrett, 92 S.W.3d 835 (Tenn. 2002), the Court of Appeals held that because Cope had been adjudicated the legal father prior to the termination hearing, the trial court erred in terminating his parental rights based solely on the additional grounds found in section 36-1-113(g)(9)(A). It vacated the juvenile court's order terminating Cope's parental rights.

Pursuant to Rule 11 of the Tennessee Rules of Appellate Procedure, Mid-South filed an application seeking permission to appeal. We granted review to determine whether this case is governed by Tennessee Code Annotated section 36-1-113(g)(9)(A) (2001) or whether the amended version of section 36-1-113(g)(9)(A) (Supp. 2003) applies retroactively.

## II. Standard of Review

---

[4]The petition seeking termination alleged five statutory grounds for termination pursuant to Tennessee Code Annotated section 36-1-113(g)(1), (9)(A)(i), (ii), (iii), (iv), and (vi). The termination petition was amended to clarify the statutory grounds of "abandonment" pursuant to section 36-1-113(g)(1).

[5]The juvenile court did not explicitly cite the applicable statutory provisions providing the grounds for termination, but the language of the order makes it clear that Cope's parental rights were terminated pursuant to Tennessee Code Annotated section 36-1-113(g)(9)(A)(iii), (iv) and (vi) (Supp. 2001).

-4-

We must determine whether Tennessee Code Annotated section 36-1-113(g)(9)(A) (Supp. 2003) may be applied retroactively. The interpretation of statutes is a question of law and, therefore, is reviewed on appeal de novo with no presumption of correctness given to the lower courts' conclusions of law. See State v. Williams, 38 S.W.3d 532, 535 (Tenn. 2001).

## III. Analysis

Cope's parental rights were terminated pursuant to Tennessee Code Annotated section 36-1-113(g)(9)(A)(iii), (iv) and (vi) (2001), and the Court of Appeals reversed the termination order. Mid-South raises several issues on appeal to this Court, the first of which suggests that this Court has no jurisdiction to consider the appeal. In particular, Mid-South contends: 1) because Cope waived the issues raised in his brief to the Court of Appeals and raised a separate issue at oral argument concerning whether there was clear and convincing evidence supporting termination under section 36-1-113(g)(9)(A) in light of Jones v. Garrett, 92 S.W.3d 835 (Tenn. 2002), the Court of Appeals improperly heard his appeal;[6] 2) the amendment to section 36-1-113(g)(9)(A), effective June 2, 2003, applies retroactively in this case; and 3) the Court of Appeals erroneously applied Jones v. Garrett to the case at bar. Cope challenges the constitutionality of the statutory amendment and the State, as an Intervenor, counters that Cope lacks standing to challenge the constitutionality of the amendment because it does not apply to him.[7]

### A. Retroactivity of Tennessee Code Annotated Section 36-1-113(g)(9)(A)

The primary issue in this case is whether the amendment to Tennessee Code Annotated section 36-1-113(g)(9)(A), effective on June 2, 2003, applies retroactively to this case. The original statute provided: "[t]he parental rights of any person who is not the legal parent or guardian of a child or who is described in § 36-1-117(b) or (c) may also be terminated based upon any one (1) or more of the following additional grounds . . . ." Tenn. Code Ann. § 36-1-113(g)(9)(A) (2001). The amendment to the statute provides:

> The parental rights of any person who, *at the time of the filing of a petition to terminate the parental rights of such person or, if no such petition is filed, at the time of the filing of a petition to adopt a child*, is not the legal parent or guardian of such child or who is described in § 36-1-117(b) or (c) may also be terminated based upon any one (1) or more of the following additional grounds . . . .

---

[6]As a preliminary issue, Mid-South asserts that the question of whether there was clear and convincing evidence supporting termination of parental rights under Tennessee Code Annotated section 36-1-113(g)(9)(A) (2001) in light of Jones v. Garrett, 92 S.W.3d 835 (Tenn. 2002), was waived because it was not raised at trial nor in Cope's brief to the Court of Appeals and, therefore, the Court of Appeals should have dismissed the appeal. We find that Cope sufficiently raised the issue of whether the evidence was sufficient to support the termination of his parental rights under section 36-1-113(g)(9)(A) and merits review.

[7]In the alternative, the State asserts that the amendment is constitutional.

Tenn. Code Ann. § 36-1-113(g)(9)(A) (Supp. 2003) (emphasis added).

The amendment to section 36-1-113(g)(9)(A) inserted the phrase "*at the time of the filing of a petition to terminate the parental rights of such person or, if no such petition is filed, at the time of the filing of a petition to adopt a child*" (emphasis added). The consequence of this amendment is that there now exists statutory authority to apply the additional grounds for termination enumerated in section 36-1-113(g)(9)(A) to persons who have established legal parentage, but did so subsequently to the filing of a petition seeking termination of their parental rights. Because Cope was not the "legal parent"[8] of D.A.H. at the time Mid-South filed its petition to terminate Cope's parental rights to D.A.H., but he was found to be D.A.H.'s father prior to the termination proceeding, the outcome of this case rests squarely on which version of section 36-1-113(g)(9)(A) applies. Mid-South contends that this amended provision is "procedural or remedial" and should be applied retroactively, therefore allowing the trial court to have considered the additional grounds for termination provided by section 36-1-113(g)(9)(A) in this case.

Under the Tennessee Constitution, "no retrospective law, or law impairing the obligations of contracts, shall be made." Tenn. Const. art. 1, § 20. Accordingly, statutes are presumed to operate prospectively unless the legislature clearly indicates otherwise. Nutt v. Champion Int'l Corp., 980 S.W.2d 365, 368 (Tenn. 1998). It has been noted, however, that certain statutes may be retroactive:

> Statutes deemed remedial or procedural apply retrospectively to causes of action arising before such acts became law and to suits pending when the legislation took effect.
>
> A procedural or remedial statute is one that does not affect the vested rights or liabilities of the parties. A procedural statute is one that addresses the mode or proceeding by which a legal right is enforced. Remedial statutes are defined as "legislation providing means or method whereby causes of action may be effectuated,

---

[8]According to Tennessee Code Annotated section 36-1-102(28) (Supp. 2003), "legal parent" means:

(A) The biological mother of a child;

(B) A man who is or has been married to the biological mother of the child if the child was born during the marriage or within three hundred (300) days after the marriage was terminated for any reason, or if the child was born after a decree of separation was entered by a court;

(C) A man who attempted to marry the biological mother of the child before the child's birth by a marriage apparently in compliance with the law, even if the marriage is declared invalid, if the child was born during the attempted marriage or within three hundred (300) days after the termination of the attempted marriage for any reason;

(D) A man who has been adjudicated to be the legal father of the child by any court or administrative body of this state or any other state or territory or foreign country or who has signed, pursuant to §§ 24-7-113, 68-3-203(g), 68-3-302 and 68-3-305(b), an unrevoked and sworn acknowledgment of paternity under the provisions of Tennessee law, or who has signed such a sworn acknowledgment pursuant to the law of any other state, territory, or foreign country; or

(E) An adoptive parent of a child or adult[.]

wrongs redressed and relief obtained . . . ."

Id. (quoting State Dep't of Human Servs. v. Defriece, 937 S.W.2d 954, 958 (Tenn. Ct. App. 1996)); see also Kuykendall v. Wheeler, 890 S.W.2d 785, 787 (Tenn. 1994). The eighth edition of Black's Law Dictionary further defines "remedial law" as legislation "passed to correct or modify an existing law" and as "a law that gives a party a new or different remedy when the existing remedy, if any, is inadequate." However, "even a procedural or remedial statute may not be applied retrospectively if it impairs a vested right or contractual obligation in violation of [Tennessee Constitution] article I, section 20." Doe v. Sundquist, 2 S.W.3d 919, 923-24 (Tenn. 1999). A "vested right" is defined as a right which "is proper for the state to recognize and protect and of which [an] individual could not be deprived arbitrarily without injustice." Id. at 923 (quoting Morris v. Gross, 572 S.W.2d 902, 905 (Tenn. 1978)).

The legislature did not clearly provide that the amendment to section 36-1-113(g)(9)(A) be retroactive; therefore, the amendment is presumed to operate prospectively. See Nutt, 980 S.W.2d at 368. Even if the amendment is a remedial statute, rather than a change in the law, the question would remain whether Cope was vested with rights which would be affected by its retroactive application.

The vested right at issue is the constitutionally-protected, fundamental right of biological parents to have the care and custody of their children. See Blair v. Badenhope, 77 S.W.3d 137, 141 (Tenn. 2002); Nale v. Robertson, 871 S.W.2d 674, 680 (Tenn. 1994); see also Stanley v. Illinois, 405 U.S. 645, 651 (1972). According to Tennessee law, a parent's right to privacy, which is protected by the state and federal constitutions, includes a parent's right to care for his or her children. In re Askew, 993 S.W.2d 1, 4 (Tenn. 1999); Hawk v. Hawk, 855 S.W.2d 573, 577-79 (Tenn. 1993). This right extends to both natural parents who are married and also to natural parents who are unmarried. See Hawk, 855 S.W.2d at 582 (finding that married parents who are fit parents are entitled to the fundamental right of privacy); see also Petrosky v. Keene, 898 S.W.2d 726, 728 (Tenn. 1995) (deciding that a father of a child born out of wedlock has a fundamental interest in the care and custody of the child under the state and federal constitutions as long as he takes affirmative steps to develop a responsible relationship with the child); Nale, 871 S.W.2d at 680 (stating that there is no reason "why a fit parent should be denied the privilege of parenthood merely because of birth out of wedlock"). The denial of the privilege of parenthood through termination of parental rights is based only upon a determination of that parent's unfitness to be a parent. Nale, 871 S.W.2d at 680. Therefore, the critical issue in this case is whether Cope's vested right would be impaired by the retroactive application of amended section 36-1-113(9)(g)(A) (Supp. 2003).

We have enumerated some of the factors helpful in determining whether application of a new law will "impair" an existing vested right.

"[I]n determining whether a retroactive statute impairs or destroys vested rights, the most important inquiries are (1) whether the public interest is advanced or retarded, (2) whether the retroactive provision gives effect to or defeats the bona fide

intentions or reasonable expectations of affected persons . . . (3) whether the statute surprises persons who have long relied on a contrary state of the law." Ficarra v. Dep't Regulatory Agencies, 849 P.2d 6, 16 (Colo. 1993). We add to these factors . . . an additional factor discussed above: the extent to which a statute appears to be procedural or remedial.

Sundquist, 2 S.W.3d at 924. Another clearly important factor is whether application of the new law results in the loss of a fundamental right.

As mentioned earlier, Cope's right to have the care and custody of his child solely depends on which version of section 36-1-113(g)(9)(A) is applied to him. Under the statute in existence at the time the acts alleged in the termination petition occurred, Cope's right to have the care and custody of D.A.H. is not subject to termination. In contrast, if the amendment is applied retroactively, Cope could lose his vested rights as a parent. Accordingly, we hold that article 1, section 20 of the Tennessee Constitution prohibits the retroactive application of section 36-1-113(g)(9)(A) as amended. Because the amended statute does not apply to Cope, there is no reason to address the constitutionality of the amendment.

## B. The Application of the Holding in Jones v. Garrett

We have held that the amended version of Tennessee Code Annotated section 36-1-113(g)(9)(A) (Supp. 2003) does not apply retroactively to this case. Thus, the former version of section 36-1-113(g)(9)(A) (2001) may be applicable in this matter. The next issue is whether Jones v. Garrett, 92 S.W.3d 835 (Tenn. 2002), governs the applicability of section 36-1-113(g)(9)(A) to the facts of this case. Jones held that the grounds for terminating parental rights under Tennessee Code Annotated section 36-1-113(g)[9](A) (1996 & Supp. 1999) do not apply to persons who are legal parents at the time of the termination proceeding. Id. at 839.

In Jones, an unwed mother wanted her child to be placed for adoption, and the father did not. Id. at 836-37. The father's parental rights were terminated under the statutory provisions applying only to individuals who had not established legal parentage, see id. at 837, which at the time of the Jones opinion, specifically stated:

The parental rights of any person who is not the legal parent or guardian of a child or who is described in § 36-1-117 (b) or (c) may also be terminated based upon any one (1) or more of the following additional grounds:

(i) The person has failed, without good cause or excuse, to pay a reasonable share of prenatal, natal, and postnatal expenses involving the birth of the child in accordance with the person's financial means promptly upon the person's receipt of notice of the child's impending birth;

(ii) The person has failed, without good cause or excuse, to make reasonable and

consistent payments for the support of the child in accordance with the child support guidelines promulgated by the department pursuant to § 36-5-101;

(iii) The person has failed to seek reasonable visitation with the child, and if visitation has been granted, has failed to visit altogether, or has engaged in only token visitation, as defined in § 36-1-102 (1) (C);

(iv) The person has failed to manifest an ability and willingness to assume legal and physical custody of the child;

(v) Placing custody of the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child; or

(vi) The person has failed to file a petition to establish paternity of the child within thirty (30) days after notice of alleged paternity by the child's mother, or as required in § 36-2-318 (j), or after making a claim of paternity pursuant to § 36-1-117 (c) (3).

Tenn. Code Ann. § 36-1-113(g)(8)(A) (Supp. 1999) (now codified as § 36-1-113(g)(9)(A) (2001 & Supp. 2003)).

The trial court in Jones specifically terminated the father's parental rights based on his failure to establish legal paternity within thirty days of notice of the child's birth. 92 S.W.3d at 837. On appeal, this Court held that the additional grounds of termination for individuals who are not legal parents, pursuant to Tennessee Code Annotated section 36-1-113(g)(9)(A),[9] apply only when no legal relationship between the parent and child has been established. Id. at 840. Because the father in Jones had established paternity prior to the hearing on the termination petition, this Court found that the additional grounds for terminating the parental rights of an individual who is not the legal parent or guardian of a child were inapplicable. Id. at 839-40.

Mid-South contends that the holding in Jones is limited to the subsection concerning the thirty-day window for making a claim of paternity after notice of the birth of a child. See Tenn. Code Ann. § 36-1-113(g)(9)(A)(vi) (2001 & Supp. 2003). Consequently, subsection (iii), which allows termination of parental rights for the parent's failure to "seek reasonable visitation," and subsection (iv), which allows a termination of parental rights because of the parent's failure to manifest an ability and willingness to assume legal and physical custody of the child, would remain valid grounds for termination against a legal parent who established parentage after the termination petition was filed. Tenn. Code Ann. § 36-1-113(g)(9)(A)(iii), (iv) (2001 & Supp. 2003).

Addressing Mid-South's claim that the holding in Jones is limited to section 36-1-113(g)(9)(A)(vi), we need only quote our holding in Jones: "[t]he legislature's use of the present tense ('is not the legal parent') indicates that the grounds for terminating parental rights under

---

[9]This section was formerly numbered Tennessee Code Annotated section 36-1-113(g)(8)(A).

Tennessee Code Annotated section 36-1-113(g)([9])(A) do not apply to persons who are legal parents at the time of the proceeding." 92 S.W.3d at 839. Accordingly, we find Mid-South's argument unpersuasive, and we also find that Jones prevents the application of section 36-1-113(g)(9)(A) to Cope because Cope established his paternity prior to the termination proceeding.[10]

## C. Abandonment

In addition to the grounds for termination alleged under Tennessee Code Annotated section 36-1-113(g)(9), which have been resolved previously in this opinion as being inapplicable to Cope, the termination petition also alleges two counts of abandonment under Tennessee Code Annotated section 36-1-113(g)(1). Specifically, the first count alleges that pursuant to Tennessee Code Annotated section 36-1-102(1)(A)(iii), Cope "willfully failed to make reasonable payments toward the support of the child's mother during the four (4) months immediately preceding the birth of the child." The second charges that pursuant to Tennessee Code Annotated section 36-1-102(1)(A)(i), Cope willfully failed to visit the child "for a period of four (4) consecutive months immediately preceding the filing of a preceding or pleading to terminate the parental rights."

Regarding the support of the child's mother, Cope testified that in the months preceding the child's birth, Honeycutt lived with him in Memphis and then in Florida. He testified that he contributed to all of their living expenses. He maintained that the expenses to which he contributed included those arising out of Honeycutt's pregnancy. No testimony was presented to rebut Cope's assertion that he made reasonable payments toward the support of Honeycutt during the four months preceding the child's birth. Thus, we conclude that this ground for abandonment is without merit.

We also conclude that Cope did not willfully fail to visit the child during the four months immediately preceding the filing of the termination petition. According to the record before us, Honeycutt deliberately misled Cope about the child's location. Then, without notifying Cope, Honeycutt placed the child with the adoptive family. Cope testified that when he found out what Honeycutt had done, he immediately expressed his interest in parenting the child. In addition to stating his intentions to Honeycutt, Cope called Mid-South to inform them that he did not wish to terminate his parental rights. Thus, sufficient evidence was presented that Cope did not willfully fail to visit the child. Moreover, we note that four months had not elapsed between the birth of the child on December 11, 2000, and the filing of the termination petition on March 29, 2001. This issue is without merit.

## IV. Conclusion

---

[10]Mid-South also asserts that the holding in Jones was not only "wrongly decided," but should not apply to the present case because Jones may be distinguished from the present case. In Jones, a petition to adopt had been filed which also sought to terminate the father's parental rights. 92 S.W.3d at 836. In this case, only a petition to terminate parental rights had been filed. However, in both cases, hearings were held on the petitions to terminate the parental rights of the fathers which resulted in the appeals. Jones, 92 S.W.3d at 837. The fact that a petition for adoption was filed in Jones does not affect its applicability to this case.

We conclude that the grounds for termination pursuant to the amended version of Tennessee Code Annotated section 36-1-113(g)(9)(A), effective June 2, 2003, may not be applied retroactively in this case. Further, the trial court found, and we agree, that the evidence does not support abandonment as a basis for termination. See Tenn. Code Ann. § 36-1-113(g)(1).

Accordingly, the order of the juvenile court is vacated and the case is remanded to the Juvenile Court of Shelby County for immediate proceedings consistent with this opinion.

Costs on appeal are taxed to the appellant, Mid-South Christian Services, Inc., for which execution may issue if necessary.

_____
ADOLPHO A. BIRCH, JR., JUSTICE