IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 22, 2017 Session

IN RE FRANCIS P.

Appeal from the Circuit Court for McMinn County
No. 2015-CV-316     Lawrence H. Puckett, Judge

No. E2016-02493-COA-R3-PT

The appellant, Tony P., filed a "Complaint and Petition to Terminate Parental Rights and/or for Adoption" in the Circuit Court for McMinn County ("trial court") on September 18, 2015. This petition sought to terminate the parental rights of the "unknown father" of a child for whom Tony P. had signed a voluntary acknowledgment of paternity ("VAP"). Jon F. filed a motion to intervene, asserting that he was the biological father of the child. The trial court allowed Jon F. to intervene in the action pursuant to an agreed order. The child's mother later filed a motion seeking to dismiss Tony P.'s petition for failure to state a claim upon which relief could be granted and lack of subject matter jurisdiction. By oral motion, Jon F. joined with the mother in seeking dismissal. The trial court entered a Memorandum and Order on August 15, 2016, finding that (1) Jon F. was the biological and legal father of the child, (2) Tony P.'s VAP had been rebutted, and (3) any and all parental rights of Tony P. as legal father were "terminated by operation of law under Tenn. Code Ann. § 36-1-102(28)(C)." The trial court entered a subsequent order dismissing the petition filed by Tony P. Tony P. timely appealed. Having determined that the trial court properly found that Jon F. challenged and rebutted the VAP executed by Tony P., we conclude that Tony P. no longer enjoyed any parental rights with regard to the child. Although we determine that the trial court erred by applying Tennessee Code Annotated § 36-1-102(28)(C) retrospectively to this action filed before the statutory subsection's enactment, we determine this error to be harmless inasmuch as Tony P.'s parental rights were a nullity. We therefore modify the judgment to reflect that Tony P. had no parental rights to be terminated following the court's rescission of the VAP. We affirm the trial court's dismissal of Tony P.'s petition seeking termination of Jon F.'s parental rights. We decline to award fees and costs to the mother and Jon F.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed as Modified; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and CHARLES D. SUSANO, JR., J., joined.

Joshua H. Jenne, Cleveland, Tennessee, for the appellant, Tony P.

Robin Ruben Flores and Corrin Fulton, Chattanooga, Tennessee, for the appellees, Erica N. and Jon F.

**OPINION**

I.  Factual and Procedural Background

Tony P. and Erica N. ("Mother") maintained an intermittent dating relationship prior to and at the time Mother became pregnant.  Shortly before Mother realized she was pregnant and during a period of time when she and Tony P. were separated, she also had a sexual relationship with Jon F.  Francis P. ("the Child") was born in October 2012.

Tony P. was present at the time the Child was born.  While at the hospital, he and Mother executed a VAP.  In addition, Tony P. was listed as the father on the Child's birth certificate.  Tony P. and Mother testified that upon the Child's birth, they believed Tony P. to be the Child's biological father.  Tony P. and Mother resided together sporadically from the time of the Child's birth until approximately May 2014, at which time the couple ended their romantic relationship.  Following their separation and until August 2015, Tony P. and Mother managed to work together to exchange the Child for co-parenting visitation.  However, Mother explained that in December 2014, she began to suspect that the Child might not be Tony P.'s biological child because of the Child's physical appearance.  At that time, Mother attempted to contact Jon F. but received no response.  Mother indicated that Tony P. also occasionally expressed doubts regarding his parentage of the Child.

In August 2015, Mother married another man and informed Tony P. that she planned to move to Texas with her new husband and the Child.  According to Tony P., he became upset, not only because Mother wished to relocate the Child with her but also because she married one of his friends.  In response, Tony P. filed a petition to establish paternity in the Hamilton County Circuit Court on August 17, 2015, seeking to establish his paternity of the Child.  He also filed a petition seeking an *ex parte* restraining order to prevent Mother from leaving Tennessee with the Child, alleging that Mother intended to "abscond" with the Child.

The Hamilton County Circuit Court entered an *ex parte* order on September 1, 2015, prohibiting Mother from leaving the jurisdiction with the Child and setting a

2

hearing on the merits for September 22, 2015. Mother relocated to Texas in early September 2015, leaving the Child in Tony P.'s physical custody upon her receipt of a letter from Tony P.'s counsel informing her of the restraining order's entry. This letter also informed Mother that until she agreed to abide by the restraining order, the Child would not be returned to her. Mother testified during the instant proceeding that she did not have the benefit of legal counsel at that time. Mother further explained that she was told by Tony P. and his counsel (or his counsel's staff) that Tony P. had obtained custody of the Child.

Meanwhile, on September 18, 2015, Tony P. filed a "Complaint and Petition to Terminate Parental Rights and/or for Adoption" in the trial court, naming Mother as the only respondent. Tony P. alleged, *inter alia*, that he was the legal father of the Child based upon his execution of the VAP. He attached a copy of a DNA test, which excluded him as the biological father, and requested that the court terminate the parental rights of the "unknown father" to enable Tony P. to adopt the Child. Tony P. also attached a copy of his Petition to Establish Paternity filed in Hamilton County. Although Mother related that Tony P. always maintained doubts concerning his parentage of the Child, Tony P. stated that he did not know for certain that he was not the Child's biological father until he received the DNA test results.

According to Mother, when she subsequently appeared for the September 22, 2015 hearing in Hamilton County Circuit Court regarding the restraining order, the only relief granted was the transfer and consolidation of the pending Hamilton County proceeding with the action filed in the trial court. In the case at bar, Mother testified that Tony P. would not permit her to see the Child while she was in Tennessee and that she was misled by Tony P. and his counsel's staff into believing that she only had the right to supervised visitation.

On February 3, 2016, Jon F. filed a motion to intervene in the instant action, attaching a DNA test that established his parentage of the Child. Jon F. testified that he did not learn that he was the biological father of the Child until receiving the results of a DNA test in December 2015. The trial court granted Jon F.'s intervention pursuant to an Agreed Order entered on February 22, 2016. Jon F. subsequently filed an answer to Tony P.'s petition, asserting that due to his lack of knowledge that he was the Child's biological father until very recently, any failure to support or visit was not willful. Jon F. thereafter filed a counterclaim seeking to establish his paternity of the Child as well as a motion seeking visitation. Tony P. subsequently filed a motion seeking a restraining order to prevent Mother from visiting with the Child unless Tony P. was permitted to supervise.

3

On June 22, 2016, attorney Robin Ruben Flores filed a Notice of Appearance as counsel for Mother. Subsequently, on July 18, 2016, Mother filed a motion to dismiss the petition filed by Tony P. In support, Mother asserted that Tony P. maintained no standing to seek a termination of Jon F.'s parental rights and that, absent standing, the trial court lacked subject matter jurisdiction. By oral motion, Jon F. joined with Mother in seeking dismissal. On July 27, 2016, Mother also requested a telephonic hearing regarding an emergency oral motion to require Tony P. to immediately return physical custody of the Child to Mother. The trial court thereafter ordered that the Child be returned to Mother and remain in her custody pending further order of the court.

On August 12, 2016, the trial court conducted a hearing regarding the competing paternity petitions filed by Tony P. and Jon F., as well as Mother's motion to dismiss. The respective order, entered August 15, 2016, recites that the court heard testimony regarding the execution of the VAP and the child's welfare. The court determined that at the time the VAP was executed, both Mother and Tony P. held the mistaken belief that Tony P. was the Child's father. The court specifically found that neither party executing the VAP did so with the intent to defraud the other or Jon F.

The trial court further found that based on the DNA evidence, Jon F. was in fact the Child's biological father, which was sufficient to rebut the VAP. Consequently, the court declared Jon F. to be the Child's biological and legal father. The court concluded that "any and all rights of Mr. P. as legal father are hereby terminated by operation of law under Tenn. Code Ann. § 36-1-102(28)(C)."[1]

The trial court also found that Tony P. became angry with Mother in 2015 when she married his friend and that Tony P. filed the action in Hamilton County Circuit Court to prevent Mother from relocating with her new husband. The court further found that while Tony P. only learned that he was not the Child's biological father when he received the DNA test results, Jon F. likewise did not know he was the father until he received the DNA test results.

The trial court determined Mother to be credible in her assertion that Tony P. told her he had been granted legal custody of the Child by the Hamilton County Circuit Court. The court thereby concluded that Mother was forced to make a "Hobson's choice" of

---

[1] Subsection (C) provides: "If the presumption of paternity set out in subdivisions (28)(A)(ii)-(iv) is rebutted as described in § 36-2-304, the man shall no longer be a legal parent for purposes of this chapter and no further notice or termination of parental rights shall be required as to this person." Tenn. Code Ann. § 36-1-102(28)(C) (Supp. 2016). However, this subsection was not enacted until March 23, 2016, subsequent to the commencement of this action in 2015. *See* 2016 Tenn. Pub. Acts, Ch. 636 § 4 (S.B. 2531).

either relocating with her new husband and her child with that husband or remaining in Tennessee to be with the Child. The court also found that while Mother was residing out of state, Tony P. visited her and attempted to convince her to resume their relationship. She nonetheless refused. The court noted that Mother had since returned to Tennessee and currently maintained a stable home.

The trial court found that although Tony P. loved the Child, his "manipulation of Mother through legal maneuvering and false representation to her concerning her legal relationships with the Hamilton County court and her child to the detriment and harm of the child from being kept from her" was motivated by his desire to resume his relationship with Mother. The court further determined that Mother, Jon F., and Tony P. were morally fit and suitable custodians for the Child.

Concerning jurisdiction, the trial court concluded that it maintained subject matter jurisdiction over this action based on the Child's residence in McMinn County and Jon F.'s petition seeking to establish paternity, which was properly filed in a court of general jurisdiction in the county wherein the Child resided. *See* Tenn. Code Ann. § 36-2-307 (2014). Ultimately, the court designated Mother as the primary custodian of the Child, allowing Tony P. reasonable visitation "in order to prevent needless harm and upset to the child." Additionally, the court appointed a guardian *ad litem* to make recommendations regarding the Child's visitation with Tony P. and with Jon F. Regarding the matter, the court found that Jon F.'s interaction with the Child should increase while Tony P.'s interaction with the Child would correspondingly decrease.

The trial court also noted that it was statutorily required to adjudicate the paternity action before considering the termination or adoption petitions. *See In re T.K.Y.*, 205 S.W.3d 343, 352 (Tenn. 2006). In concluding that Jon F. was the biological and legal father of the Child, the court quoted with approval from *In re T.K.Y.*, wherein the Supreme Court explained that "once paternity has been established, the biological father becomes the legal father" and "the rights of the biological father are superior to the rights of another would-be father." *Id.* at 352.

The trial court further concluded that a VAP could be rebutted based upon a material mistake of fact. *See* Tenn. Code Ann. § 24-7-113(e)(1). Based upon Jon F.'s assertion of paternity, the court found that Jon F. had properly instituted a challenge to the validity of the VAP pursuant to Tennessee Code Annotated § 24-7-113(e)(2). The court also noted that Jon F. maintained standing to challenge the VAP based on Tennessee Code Annotated § 24-7-113(e) and *In re C.A.F.*, 114 S.W.3d 524, 529-30 (Tenn. Ct. App. 2003). The court again stated that Tony P.'s parental rights were terminated as a matter of law based upon rebuttal of the VAP, pursuant to Tennessee Code Annotated § 36-1-102(28)(C). The trial court concluded that because termination

of Mother's parental rights was not sought, the court was required to dismiss Tony P.'s petition for termination and adoption. *See In re Shelby L.B.*, No. M2010-00879-COA-R9-PT, 2011 WL 1225567, at *8 (Tenn. Ct. App. Mar. 31, 2011) (explaining that, except in actions to adopt filed by a stepparent, in order for a petition for termination and adoption to proceed, the biological mother and father must both "be made parties to the adoption suit for purposes of terminating their rights.").

On November 15, 2016, the trial court entered an order dismissing the petition for termination and adoption filed by Tony P., incorporating the August 15, 2016 Memorandum and Order by reference. The court declared the order to be final pursuant to Tennessee Rule of Civil Procedure 54.02. The court also entered a legitimation order on November 21, 2016, determining Jon F. to be the Child's biological and legal father. Tony P. filed a timely notice of appeal regarding the November 15, 2016 order.

## II. Issues Presented

Tony P. presents the following issues for our review, which we have restated slightly:

1. Whether the trial court erred in dismissing Tony P.'s petition seeking termination of Jon F.'s parental rights.

2. Whether the trial court erred in terminating Tony P.'s parental rights.

Mother and Jon F. present the following additional issues for our review, which we have also restated slightly:

3. Whether Mother and Jon F. should be granted an award of attorney's fees for Tony P.'s filing of a frivolous appeal.

4. Whether the costs on appeal should be taxed to Tony P.

## III. Standard of Review

In a termination of parental rights case, this Court has a duty to determine "whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006). The trial court's findings of fact are reviewed *de novo* upon the record, accompanied by a presumption of correctness unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d); *see In re Carrington H.*, 483 S.W.3d 507, 524 (Tenn. 2016); *In re F.R.R., III*, 193 S.W.3d at 530. Questions of law, however, are

reviewed *de novo* with no presumption of correctness. *See In re Carrington H.*, 483 S.W.3d at 524 (citing *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009)). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

"Parents have a fundamental constitutional interest in the care and custody of their children under both the United States and Tennessee constitutions." *Keisling v. Keisling*, 92 S.W.3d 374, 378 (Tenn. 2002). It is well established, however, that "this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)). As our Supreme Court has recently explained:

> The parental rights at stake are "far more precious than any property right." *Santosky*, 455 U.S. at 758-59. Termination of parental rights has the legal effect of reducing the parent to the role of a complete stranger and of ["]severing forever all legal rights and obligations of the parent or guardian of the child." Tenn. Code Ann. § 36-1-113(l)(1); *see also Santosky*, 455 U.S. at 759 (recognizing that a decison terminating parental rights is "*final* and irrevocable"). In light of the interests and consequences at stake, parents are constitutionally entitled to "fundamentally fair procedures" in termination proceedings. *Santosky*, 455 U.S. at 754; *see also Lassiter v. Dep't of Soc. Servs. of Durham Cnty, N.C.*, 452 U.S. 18, 27 (1981) (discussing the due process right of parents to fundamentally fair procedures).
>
> Among the constitutionally mandated "fundamentally fair procedures" is a heightened standard of proof—clear and convincing evidence. *Santosky*, 455 U.S. at 769. This standard minimizes the risk of unnecessary or erroneous governmental interference with fundamental parental rights. *Id.*; *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010). "Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard T.*, 319 S.W.3d at 596 (citations omitted). The clear-and-convincing-evidence standard ensures that the facts are established as highly probable, rather than as simply more probable than not. *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005); *In re M.A.R.*, 183 S.W.3d 652, 660 (Tenn. Ct. App. 2005).

> \* \* \*

> In light of the heightened burden of proof in termination
> proceedings, however, the reviewing court must make its own
> determination as to whether the facts, either as found by the trial court or as
> supported by a preponderance of the evidence, amount to clear and
> convincing evidence of the elements necessary to terminate parental rights.
> *In re Bernard T.*, 319 S.W.3d at 596-97.

*In re Carrington H.*, 483 S.W.3d at 522-24. "[P]ersons seeking to terminate [parental] rights must prove all the elements of their case by clear and convincing evidence," including statutory grounds and the best interest of the child. *See In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010).

As our Supreme Court has explained with regard to a motion to dismiss, "When the trial court's grant of a Rule 12.02(6) motion to dismiss is appealed, we must take the factual allegations contained in the complaint as true and review the lower courts' legal conclusions *de novo* without a presumption of correctness." *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999). "It is well-settled that a complaint should not be dismissed for failure to state a claim unless it appears that the plaintiff can prove no set of facts in support of his or her claim that would warrant relief." *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002). "Such a motion challenges the legal sufficiency of the complaint, not the strength of the plaintiff's proof, and, therefore, matters outside the pleadings should not be considered in deciding whether to grant the motion." *Id.*

## IV. Dismissal of Termination and Adoption Petition

Tony P. contends that the trial court erred by dismissing his petition for termination and adoption. Relying on *In re Shelby L.B.*, 2011 WL 1225567, at \*8, the court dismissed Tony P.'s Petition because he did not seek the termination of Mother's parental rights. In *Shelby*, the mother and a male friend, to whom the mother was not married, filed a petition seeking to terminate the parental rights of the child's estranged father so that the mother's friend could adopt the child. *Id*. at \*1. The father filed a motion to dismiss, asserting that the termination and adoption statutes clearly provided that the parental rights of both parents had to be terminated or surrendered before anyone except a stepparent could adopt a child. *Id*. at \*2. This Court agreed, stating:

> It is axiomatic that an adoption cannot occur as long as the parental
> rights of the legal or biological parent(s) still exist and are in effect. Both

statutory and case law make it clear that there can be no legal adoption without a valid surrender or termination of parental rights. *See, e.g.,* Tenn. Code Ann. § 36-1-102(1)(A) (defining abandonment "for purposes of terminating the parental . . . rights of parent(s) . . . of a child in order to make that child available for adoption"); Tenn. Code Ann. § 36-1-113(d)(3)(A)(iii) (requiring that a petition describe whether parental rights have been terminated or surrendered and whether "any other such rights must be terminated before the child can be made available for adoption"); Tenn. Code Ann. § 36-1-116(b)(11) (requiring that an adoption petition contain a statement that there has been full compliance with the law regarding surrender or termination of rights or a statement of intent to effect compliance with requirements for surrender or termination "as part of the adoption proceeding"); Tenn. Code Ann. § 36-1-120(a)(6)(D) (requiring that the order of adoption include a statement that termination of all necessary parental rights by court order or surrender of those rights has occurred).

"There can be no valid adoption without a valid termination of parental rights." *In re Riggs,* 612 S.W.3d 461, 469 (Tenn. Ct. App. 1980). "[B]efore an adoption can occur the parents must either consent or have been determined to have abandoned the child." *Johnson v. Hall,* 678 S.W.2d 65, 68 (Tenn. Ct. App. 1984); *see In re A.B., J.B., C.H., and B.H.,* 198 S.W.3d 757, 767 (Tenn. Ct. App. 2006) (explaining that terminating mother's rights would allow children's integration into a stable and permanent environment through adoption); *O'Daniel v. Messier,* 905 S.W.2d 182, 186 (Tenn. Ct. App. 1995) (explaining that parents whose rights are terminated become legal strangers to the child while the adoptive parents acquire "all the parental rights and responsibilities"); *Ross v. Estrada,* 1990 WL 156284, at *9 (Tenn. Ct. App. Oct. 19, 1990) (holding that a court must terminate a parent's relationship with a child if permanency and stability can be achieved through adoption); *In re adoption of Lay,* 1988 WL 130345, at *2 (Tenn. Ct. App. Dec. 7, 1988) (stating that termination of parental rights is a crucial element of an adoption proceeding).

*In re Shelby L. B.*, 2011 WL 1225567, at *6. This Court further explained: "A comprehensive reading of the statutes governing termination of parental rights and adoption leaves no doubt that an adoption is not authorized absent a stepparent situation as discussed below, unless the rights of both parents are terminated or voluntarily relinquished." *Id*. at *7 (emphasis added).

9

Noting that the male petitioner in *Shelby* had asserted the right to file a petition to terminate the father's parental rights even if he could not legally adopt the child, basing his standing on the fact that he was a "prospective adoptive parent" as someone who had filed a petition for adoption, this Court stated:

We interpret the legislative scheme for termination and adoption, taken as a whole, as contemplating that a "prospective adoptive parent" is one who not only harbors the intention or desire to adopt, but who also has the legal capacity or ability to do so. Thus, when the face of a petition for termination of parental rights and adoption reveals that the petitioner does not have such legal capacity to adopt, it is appropriate to dismiss that petition.

*Id.* at *10. Based on this clear precedent, we determine that the trial court appropriately dismissed Tony P.'s petition seeking to terminate the rights of Jon F. because such petition did not also seek to terminate the rights of Mother. We therefore affirm the trial court's dismissal of Tony P.'s termination and adoption petition.

V. Termination of Tony P.'s Parental Rights

Tony P. also argues that the trial court erred by terminating his parental rights because he had executed a VAP and was thereby the legal father of the Child. As our Supreme Court has explained with regard to determination of legal father:

The determination of the child's legal father is a two-step process. First, we look to the parentage statutes, Tennessee Code Annotated sections 36-2-301 to -322, to determine the child's father. Then, we look to the adoption and termination statutes to determine whether the parentage father is also the legal father. *See id.* §§ 36-1-101 to -142.

*In re T.K.Y.*, 205 S.W.3d at 349.

The parentage statutes provide in pertinent part:

(a) A man is rebuttably presumed to be the father of a child if:

(1) The man and the child's mother are married or have been married to each other and the child is born during the marriage or within three hundred (300) days after the marriage is terminated by death, annulment, declaration of invalidity, or divorce;

10

(2) Before the child's birth, the man and the mother have attempted to marry each other in compliance with the law, although the attempted marriage is or could be declared illegal, void and voidable;

(3) After the child's birth, the man and the mother have married or attempted to marry each other in compliance with the law although such marriage is or could be declared illegal, void, or voidable; and:

> (A) The man has acknowledged his paternity of the child in a writing filed under the putative father registry established by the department of children services, pursuant to § 36-2-318;

> (B) The man has consented in writing to be named the child's father on the birth certificate; or

> (C) The man is obligated to support the child under a written voluntary promise or by court order;

(4) While the child is under the age of majority, the man receives the child into the man's home and openly holds the child out as the man's natural child; or

(5) Genetic tests have been administered as provided in § 24-7-112, an exclusion has not occurred, and the test results show a statistical probability of parentage of ninety-five percent (95%) or greater.

Tenn. Code Ann. § 36-2-304 (2014). Based on the above provisions, Jon F. is the Child's parentage father based on subsection (a)(5) and the results of the DNA test. *See In re T.K.Y.*, 205 S.W.3d at 349.

In the termination and adoption statutes, a legal parent is defined as:

(i) The biological mother of a child;

11

(ii) A man who is or has been married to the biological mother of the child if the child was born during the marriage or within three hundred (300) days after the marriage was terminated for any reason, or if the child was born after a decree of separation was entered by a court;

(iii) A man who attempted to marry the biological mother of the child before the child's birth by a marriage apparently in compliance with the law, even if the marriage is declared invalid, if the child was born during the attempted marriage or within three hundred (300) days after the termination of the attempted marriage for any reason;

(iv) A man who has been adjudicated to be the legal father of the child by any court or administrative body of this state or any other state or territory or foreign country <u>or who has signed</u>, pursuant to §§ 24-7-113, 68-3-203(g), 68-3-302 or 68-3-305(b), <u>an unrevoked and sworn acknowledgment of paternity under Tennessee law</u>, or who has signed such a sworn acknowledgment pursuant to the law of any other state, territory, or foreign country; or

(v) An adoptive parent of a child or adult[.]

Tenn. Code Ann. § 36-1-102(28)(A) (2014) (emphasis added). Furthermore, Tennessee Code Annotated § 36-1-102(28)(B) provides:

A man shall not be a legal parent of a child based solely on blood, genetic, or DNA testing determining that he is the biological parent of the child without either a court order or voluntary acknowledgement of paternity pursuant to § 24-7-113. Such test may provide a basis for an order establishing paternity by a court of competent jurisdiction, pursuant to the requirements of § 24-7-112[.]

Therefore, based on the provisions of the termination and adoption statutes, Tony P. met the statutory definition of a legal father at the time of the trial court's hearing. As our Supreme Court has explained, "[t]he legal father may or may not be the biological father of a child." *In re T.K.Y.*, 205 S.W.3d at 351.

As Tennessee Code Annotated § 24-7-113(a) (2000) provides, a VAP "shall constitute a legal finding of paternity on the individual named as the father of the child in the acknowledgment . . . ." *See In re T.M.S.*, No. W2012-02220-COA-R3-JV, 2013 WL 3422975, at *4 (Tenn. Ct. App. July 8, 2013) ("Unless rescinded, a VAP is conclusive of the parentage of the man who executes it, without a court order."). As the trial court

12

explained, however, an action can be filed to rebut the VAP's presumption of paternity based upon a material mistake of fact. *See* Tenn. Code Ann. § 24-7-113(e)(1). The statute provides that a "challenger must institute the proceeding upon notice to the other signatory and other necessary parties . . . within five (5) years of the execution of the acknowledgment . . . ." *See* Tenn. Code Ann. § 24-7-113(e)(2). The trial court properly treated Jon F.'s petition, which was filed within five years of the VAP's execution, as an action challenging the validity of the VAP executed by Tony P.[2]

The statute further provides that, following genetic testing, "[i]f the acknowledged father is found to be excluded by the tests, an action seeking support shall be dismissed or the acknowledgment of paternity shall be rescinded, as appropriate." *See* Tenn. Code Ann. § 24-7-113(e)(3). Furthermore, "[i]f . . . the voluntary acknowledgment is rescinded by order of the court based upon tests conducted pursuant to subsection (e) which excluded a person as parent, no further action may be initiated against such excluded person." *See* Tenn. Code Ann. § 24-7-113(g)(2). It likewise follows that such a person, who no longer maintains an obligation of support, would also no longer possess parental rights to the child. *See, e.g., In re C.A.F.*, 114 S.W.3d at 529-30; *see also Welch v. Welch*, 195 S.W.3d 72, 76 (Tenn. Ct. App. 2005) (explaining that the "duty to support arises out of the parent-child relationship"). As this Court has explained:

> Tenn. Code Ann. § 24-7-113 [the VAP statute] creates a mechanism for establishing paternity without the intervention of the court. Its main purpose is to make it possible to decree child support orders without first having to go through a paternity proceeding. *See* Tenn. Code Ann. § 24-7-113(b)(1). It was not meant to allow a non-parent to obtain parental rights over a child without having to go through an adoption proceeding. We agree with DCS that its use for such a purpose is in violation of the public policy of this state, as unequivocally stated in the adoption statutes.

*In re C.A.F.*, 114 S.W.3d at 530.

In *In re C.A.F.*, an incarcerated mother's male friend, Mr. F., signed a VAP and agreed to be listed as the father on the infant child's birth certificate in order to prevent the Tennessee Department of Children's Services ("DCS") from taking custody of the child at birth. *See* 114 S.W.3d at 525-26. The child was placed in the custody of DCS two years later, with DCS filing a petition to terminate the parental rights of the mother and Mr. F. *Id.* at 526. The trial court refused to terminate Mr. F's rights, however, determining that the VAP created a conclusive presumption of paternity that could only

---

[2] This Court has previously explained that a VAP may be challenged by someone other than the signatories to the acknowledgment. *See In re C.A.F.*, 114 S.W.3d at 529. Further discussion of *In re C.A.F.* follows.

be rescinded under very limited circumstances. *Id*. at 527. The trial court held that DCS had no standing to challenge the validity of the VAP, despite DNA test results demonstrating that Mr. F. was not the child's biological father. *Id*. The trial court also determined that even if DCS did have standing to challenge the VAP, DCS had not proven the statutory grounds for rescission: fraud, duress, or mutual mistake of fact. *Id*.; *see* Tenn. Code Ann. § 24-7-113(e)(1). The trial court further found that grounds for terminating Mr. F's parental rights had not been proven. *Id*.

On appeal to this Court in *In re C.A.F.*, DCS argued that the trial court had construed Tennessee Code Annotated § 24-7-113 too narrowly and in such a manner as to violate the public policy of Tennessee. *Id*. at 528. This Court agreed, explaining:

> In the present case, considerations of economy (DNA testing is very expensive) and judicial non-interference in family matters have made it possible for a non-parent to legally assume the paternal role under Tenn. Code Ann. § 24-7-113 without scientific proof of actual paternity. Under different circumstances, a child's interest in legitimacy and support creates a common law presumption of paternity in the husband where a child is born to a married couple, no matter how soon the birth follows the marriage. *Shell v. Law,* 935 S.W.2d 402 (Tenn. Ct. App. 1996). In neither of these situations, however, is the presumption of paternity irrebuttable. *See State ex rel Cihlar v. Crawford,* 39 S.W.3d 172 (Tenn. Ct. App. 2000); *Granderson v. Hicks,* App. No. 02A01-9801-JV-00007, 1998 WL 886559 (Tenn. Ct. App. Dec. 17, 1998); *Jackson v. Thornton,* 133 Tenn. 36, 179 S.W. 384 (1915).

> The normal operation of Tenn. Code Ann. § 24-7-113 makes it possible for an unwed mother to confer a constitutionally protected parental status upon any male willing to sign a voluntary acknowledgment of paternity. By limiting paternity challenges to the signatories to a voluntary acknowledgment, the trial court would make that status virtually unassailable, even to challenge by the actual biological father. This is an inappropriate construction of Tenn. Code Ann. § 24-7-113, for it would defeat the clear intent of the paternity statutes.

*In re C.A.F.*, 114 S.W.3d at 529. Determining that fraud or, at most, mutual mistake of fact had been involved in the execution of the VAP, this Court reversed the trial court's determination regarding the validity of the VAP. *Id*.; *see* Tenn. Code Ann. § 24-7-113(e)(1). Having determined that the VAP had been appropriately challenged, this Court reversed the trial court's decision "to allow Mr. F. to retain the parental status he had obtained as a result of his voluntary acknowledgment of paternity." *Id*. at 528.

14

Similarly, in this action, the trial court determined that the VAP executed by Tony P. should be rescinded for mutual mistake of fact regarding its execution pursuant to Tennessee Code Annotated § 24-7-113(e)(1). As a result, Tony P. maintained no parental rights with regard to the Child. *See In re C.A.F.*, 114 S.W.3d at 528-29.[3]

Rather than determining that Tony P. had no parental rights to terminate, however, the trial court relied upon Tennessee Code Annotated § 36-1-102(28)(C) to terminate Tony P.'s parental rights. The trial court, in essence, applied subsection (C) retrospectively because the subsection was not added to the statute until March 2016, which was several months after this action had been filed. *See* 2016 Tenn. Pub. Acts, Ch. 636 § 4 (S.B. 2531). Pursuant to the Tennessee Constitution, "no retrospective law, or law impairing the obligations of contracts, shall be made." *See* Tenn. Const. art. 1, § 20; *In re D.A.H.*, 142 S.W.3d 267, 273 (Tenn. 2004). Therefore, "statutes are presumed to operate prospectively unless the legislature clearly indicates otherwise." *In re D.A.H.*, 142 S.W.3d at 273 (citing *Nutt v. Champion Int'l Corp.*, 980 S.W.2d 365, 368 (Tenn. 1998)).

Upon review, we determine that the trial court erred in applying subsection (C) retrospectively. As the Supreme Court noted in *In re D.A.H.*, retrospective application is reserved for certain types of statutes:

> Statutes deemed remedial or procedural apply retrospectively to causes of action arising before such acts became law and to suits pending when the legislation took effect.

> A procedural or remedial statute is one that does not affect the vested rights or liabilities of the parties. A procedural statute is one that addresses the mode or proceeding by which a legal right is enforced. Remedial statutes are defined as "legislation providing means or method whereby causes of action may be effectuated, wrongs redressed and relief obtained . . . ."

*Id.* (quoting *Nutt v. Champion Int'l Corp.*, 980 S.W.2d 365, 368 (Tenn. 1998)).

---

[3] We note that the presence of Tony P.'s name on the Child's birth certificate does not confer parental rights. *See In re Amadi A.*, No. W2014-01281-COA-R3-JV, 2015 WL 1956247, at *4 (Tenn. Ct. App. Apr. 24, 2015) ("Although a birth certificate provides ""'prima facie evidence of the facts stated,""' pursuant to Tenn. Code Ann. § 68-3-202, the names listed on the birth certificate 'are not a finding of parentage nor do they create or terminate parental rights.'") (quoting *In re Adoption of A.F.C.*, No. M2013-00583-COA-R3-CV, 2014 WL 3540670 (Tenn. Ct. App. July 16, 2014), *perm. app. denied* (Tenn. Nov. 20, 2014)).

In general, a statute is procedural "if it defines the . . . proceeding by which a legal right is enforced, as distinguished from the law which gives or defines the right." *Sundquist,* 2 S.W.3d at 923 (citing *Kuykendall v. Wheeler,* 890 S.W.2d 785, 787 (Tenn. 1994)). Similarly, "[a] statute is remedial if it provides the means by which a cause of action may be effectuated, wrongs addressed, and relief obtained." *Id.* (citing *Dowlen v. Fitch*, 264 S.W.2d 824, 826 (Tenn. 1954)). However, "even a procedural or remedial statute may not be applied retrospectively if it impairs a vested right or contractual obligation in violation of [Tennessee Constitution] article I, section 20." *Id.* at 923-24. A "vested right" is defined as a right which "is proper for the state to recognize and protect and of which [an] individual could not be deprived arbitrarily without injustice." *Id.* at 923 (quoting *Morris v. Gross,* 572 S.W.2d 902, 905 (Tenn. 1978)).

Our Supreme Court has established certain factors to be utilized in determining whether application of a new law will "impair" an existing vested right:

> "[I]n determining whether a retroactive statute impairs or destroys vested rights, the most important inquiries are (1) whether the public interest is advanced or retarded, (2) whether the retroactive provision gives effect to or defeats the bona fide intentions or reasonable expectations of affected persons . . . (3) whether the statute surprises persons who have long relied on a contrary state of the law."

*Sundquist,* 2 S.W.3d at 924 (quoting *Ficarra v. Dep't of Regulatory Agencies*, 849 P.2d 6 (Colo. 1993)). The Court further provided, "We add to these factors . . . an additional factor discussed above: the extent to which a statute appears to be procedural or remedial." *Sundquist,* 2 S.W.3d at 924.

Our Supreme Court has previously addressed this issue as related to the constitutionally protected right that parents have to the custody and care of their children. *See In re D.A.H.*, 142 S.W.3d at 274. The *D.A.H.* Court determined that an amendment regarding the statutory grounds for termination of parental rights, if applied retrospectively, would cause the father to lose his constitutional and vested rights as a parent.[4] Therefore, the Court held that pursuant to article 1, section 20 of the Tennessee Constitution, the amendment could not be applied retroactively. *See In re D.A.H.*, 142 S.W.3d at 274 (citing Tenn. Const. art. 1, § 20). The facts in the case at bar are on point with the factual circumstances in *In re D.A.H*. We therefore conclude that the trial court erred in applying the amendment to Tennessee Code Annotated § 36-1-102(28)

---

[4] The amendment in question concerned Tennessee Code Annotated § 36-1-113(g)(9)(A), and added statutory authority to apply the additional grounds for termination enumerated in subsection 36-1-113(g)(9)(A) to persons who established legal parentage subsequent to the filing of a petition seeking termination of their parental rights. *See In re D.A.H.*, 142 S.W.3d at 272-73.

retrospectively to terminate Tony P.'s parental rights. However, having determined that Tony P. no longer possessed parental rights following rescission of the VAP, we further determine this error to be harmless. We therefore modify the judgment to reflect that Tony P. possessed no parental rights to be terminated following the court's rescission of the VAP.

## VI. Attorney's Fees and Costs

Both of the issues raised by Mother and Jon F. concern attorney's fees and costs predicated on their assertion that Tony P.'s appeal is frivolous. They argue that Tony P.'s principal brief is insufficient pursuant to Tennessee Rule of Appellate Procedure 27, which governs the content and form of appellate briefs. Upon review, we determine that none of the slight insufficiencies or errors cited by Mother and Jon F. would warrant dismissal or waiver of the issues raised. We also note that Mother and Jon F. present an argument regarding Tony P.'s unclean hands in their responsive brief not properly raised in their statement of issues. *See* Tenn. R. App. P. 27(a)(4).

Mother and Jon F. seek attorney's fees and costs based on their characterization of Tony P.'s appeal as frivolous. Tennessee Code Annotated § 27-1-122 (2000) provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

A frivolous lawsuit is one that is devoid of merit or one that has no reasonable chance of succeeding. *See Young v. Barrow*, 130 S.W.3d 59, 67 (Tenn. Ct. App. 2003). We do not determine Tony P.'s appeal to be frivolous; therefore, an award of fees and costs is unwarranted.

## VII. Conclusion

For the foregoing reasons, we affirm the trial court's dismissal of Tony P.'s termination petition. Although we have determined that the trial court erred in retrospectively applying Tennessee Code Annotated § 36-1-102(28)(C) to terminate Tony P.'s parental rights, we further determine this error to be harmless inasmuch as Tony P.'s parental rights were a nullity. We therefore modify the judgment to reflect that Tony P. had no parental rights to be terminated following the court's rescission of the VAP. We further decline to award attorney's fees or costs. This case is remanded to the trial court,

pursuant to applicable law, for enforcement of the judgment and collection of costs assessed below.  Costs on appeal are taxed one-half to the appellant, Tony P., and one-half to the appellees, Erica N. and Jon F.


_____
THOMAS R. FRIERSON, II, JUDGE