IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 3, 2017 Session

## IN RE HANNAH C.

**Appeal from the Circuit Court for Montgomery County**
**No. MCCCCVSA14-1256  William R. Goodman, III, Judge**

_____

### No. M2016-02052-COA-R3-PT

_____

This is a termination of parental rights case.  The trial court terminated Appellant's parental rights to the minor child on the grounds of: (1) abandonment by willful failure to support or visit; (2) abandonment by an incarcerated parent by wanton disregard; and (3) on grounds codified at Tennessee Code Annotated Section 36-1-113(g)(9)(A) *et seq.* Because Appellees did not meet their burden to show that Father willfully failed to support or visit the child, and because Appellees did not meet their burden to show that Father had the financial means to pay for his reasonable share of prenatal and postnatal support, we reverse the trial court's findings as to these grounds.  We affirm as to the other grounds found by the trial court.  We also affirm the trial court's finding that termination of Appellant's parental rights is in the best interest of the minor child.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the trial court is Reversed in Part; Affirmed in Part, and Remanded.**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which RICHARD H. DINKINS and W. NEAL MCBRAYER, JJ., joined.

B. Nathan Hunt, Clarksville, Tennessee, for the appellant, Hector N.

Sharon T. Massey, Clarksville, Tennessee, for the appellees, Natasha S. and Jason S.

## OPINION

## I. Background

This case concerns the minor child, Hannah C. (d.o.b. December 2009) ("the Child").[1] Although he is not listed on the birth certificate, Hector N. ("Appellant," or "Father") is the Child's alleged biological father. At age 21, Father raped the Child's mother, Ashley M. ("Mother"), who was only 13 at the time. On March 4, 2010, Appellant was convicted of two counts of statutory rape, one against Mother and one against another 14 year-old girl. He received two years' probation for the statutory rape convictions. Subsequent to his statutory rape convictions and placement on probation, he continued to have communication with Mother, including sending her sexually explicit photos. As a result, Appellant was convicted of Especially Aggravated Exploitation of a Minor in April of 2011 and was sentenced to 8 years' imprisonment. He was released in 2016 after serving 6 years of his sentence.

In January of 2014, Mother and the Child moved into the home of Jason and Natasha S. (together "Appellees"). Mother had been diagnosed with stage-4 ovarian cancer and could no longer care for the Child. Mother died in October of 2014.

On June 20, 2014, Appellees and Mother filed a joint Petition for Adoption and Termination of Parental Rights and listed, as a Respondent, the Child's "Unknown Biological Father." On September 12, 2014, the Child's maternal grandmother filed an Intervening Petition for Custody of the Child. In her petition, grandmother alleged that Appellant was the biological father of the Child. On September 16, 2014, Appellees filed an Amended Petition for Adoption and Termination and specifically named Appellant as the Child's alleged birth father. Appellees sought termination of Father's parental rights on the grounds of: (1) abandonment by willful failure to visit or support; and (2) pursuant to the grounds listed under Tennessee Code Annotated Section 36-1-113(g)(9)(A). On the same day, Mother filed an Affidavit, wherein she stated that Appellant was the Child's father. Mother's deposition was taken in September of 2014, and she testified that Appellant was the Child's father by virtue of the statutory rape.

On September 29, 2014, Appellant filed a Notice of Intent to Claim Paternity with the Tennessee Department of Children's Services. On December 11, 2014, all visitation issues relating to the maternal grandmother were resolved by Agreed Order between Appellees and grandmother.

The trial court heard the petition to terminate Father's parental rights and for

---

[1] In termination of parental rights cases, it is the policy of this Court not to use the last names of minor children and other parties in order to protect their identities.

adoption on September 14, 2016. On September 16, 2016, the trial court terminated Appellant's parental rights, approved the adoption, and entered a Final Decree of Adoption. Specifically, the trial court terminated Appellant's parental rights on three grounds: (1) abandonment by willful failure to support or visit; (2) abandonment by an incarcerated parent by wanton disregard; and (3) on grounds codified at Tennessee Code Annotated Section 36-1-113(g)(9)(A), *et seq.* The trial court also found that termination of Father's parental rights was in the Child's best interest. On September 27, 2016, the trial court entered its Findings of Fact and Conclusions of Law. Appellant filed his Notice of Appeal on October 4, 2016.[2]

## II. Issues

1. Whether the trial court erred in concluding that any grounds for termination of parental rights had been established by clear and convincing evidence.

2. Whether clear and convincing evidence supports the trial court's determination that termination of Appellant's parental rights is in the Child's best interest.

Appellee raises the additional issue of whether this Court has subject-matter jurisdiction to hear the appeal because Father did not personally sign the Notice of Appeal. In its recent decision, *In re Bentley D.*, No. E1016-02299-SC-RDO-PT, 2017 WL 5623577 (Tenn. Nov. 22, 2017), the Tennessee Supreme Court held that the signature requirement contained in Tennessee Code Annotated Section 36-1-124(d), requiring the appellant to sign the notice of appeal, was satisfied by the appellant's attorney's signature on the notice of appeal. Here, appellant did not sign the notice of appeal; however, his attorney did. As such, under the holding in *In re Bentley D.*, this Court has jurisdiction to adjudicate the appeal on its merits, and this issue is rendered moot.

## III. Standard of Review

"A biological parent's right to the care and custody of his or her child is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re Carrington H.*, 483 S.W.3d 507, 522 (Tenn. 2016). Although constitutionally protected, parental rights are not absolute. *Id.* at 522. Tennessee courts are vested with the authority to terminate parental rights when necessary to prevent serious harm to children. *Id.* A decision terminating parental rights is final and irrevocable. *See* Tenn. Code Ann. § 36-1-113. Therefore, parents are

---

[2] At the final trial, the audio recorder malfunctioned and there is no recording and no transcript of the final hearing. Because a transcript of the final trial is not available, Appellees filed a Statement of Evidence. Appellant did not file a Statement of Evidence. This Court allowed Appellant ten days to file any objections to Appellees' Statement of Evidence pursuant to Tennessee Rule of Appellate Procedure 8A(c), but Appellant declined to do so, instead, relying on documents attached to his appellate brief.

constitutionally entitled to fundamentally fair procedures in termination proceedings. *See In re Carrington H.*, 483 S.W.3d at 522.

In order to ensure fundamental fairness in termination proceedings, Tennessee law imposes a heightened standard of proof—clear-and-convincing evidence—for the parent's benefit. *See* Tenn. Code Ann. § 36-1-113(c)(1); *In re Carrington H.*, 483 S.W.3d at 522. The clear-and-convincing-evidence standard ensures that the facts supporting the statutory grounds for parental rights termination are highly probable before the State terminates a parent's fundamental right. *In re Carrington H.*, 483 S.W.3d at 522. Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004).

The heightened burden of proof applies to both the initial determination of whether statutory grounds for termination have been established and whether termination is in the best interest of the child. *Id*. First, the petitioner must establish, by clear-and-convincing evidence, at least one of the statutory grounds for termination of the parent's rights. *See* Tenn. Code Ann. § 36-1-113(c)(1); *In re Angela E.*, 303 S.W.3d 240, 251 (Tenn. 2010). Second, the petitioner must prove, by clear-and-convincing evidence, that termination of the parent's rights is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(2); *In re Carrington H.*, 483 S.W.3d at 523 ("The best interests analysis is separate from and subsequent to the determination that there is clear-and-convincing evidence of grounds for termination.") "These requirements ensure that each parent receives the constitutionally required 'individualized determination that a parent is either unfit or will cause substantial harm to his or her child before the fundamental right to the care and custody of the child can be taken away.'" *See In re Carrington H.*, 483 S.W.3d at 523 (quoting *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999)).

In light of the heightened standard of proof, an appellate court must modify the customary standard of review mandated by Tennessee Rule of Appellate Procedure 13(d) when reviewing a trial court's findings in termination proceedings. *Id.* at 523; *In re Angela E.*, 303 S.W.3d at 246. First, we review the trial court's specific factual findings *de novo* upon the record with a presumption of correctness. Tenn. R. App. P. 13(d); *In re Taylor B.W.*, 397 S.W.3d 105, 112 (Tenn. 2013). We will not disturb the trial court's findings unless the evidence in the record preponderates otherwise. Tenn. R. App. P. 13(d). However, in termination proceedings, a reviewing court must then make its own determination as to whether clear-and-convincing evidence supports termination. *In re Taylor B.W.*, 397 S.W.3d at 112. Whether the facts are sufficient to support termination of parental rights is a conclusion of law, which this Court reviews *de novo* with no presumption of correctness. *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007) (citing *In re Valentine*, 79 S.W.3d 539, 548 (Tenn. 2002)).

## IV. Analysis

### A. The Sufficiency of the Record on Appeal

When there is no transcript for us to review on appeal, it is necessary that we address the sufficiency of the record presented so we may determine whether we are able to come to a conclusion on the underlying issues based on the record presented. A record of sufficient completeness is required to permit proper appellate review of a parent's claims in termination of parental rights proceedings. *See **In re Ian B.***, M2015-01079-COA-R3-PT, 2016 WL 2865875 (Tenn. Ct. App. May 11, 2016); ***In re Austin C.***, No. M2013-02147-COA-R3-PT, 2014 WL 4261178 (Tenn. Ct. App. Aug. 27, 2014); ***L.D.N. v. R.B.W.***, No.E2005-02057-COA-R3-PT, 2006 WL 369275 (Tenn. Ct. App. Feb. 17, 2006); ***In re J.M.C.H.***, No. M2002-01097-COA-R3-JV, 2002 WL 31662347 (Tenn. Ct. App. Nov. 26, 2002); ***In re Adoption of J.D.W.***, No. M2000-00151-COA-R3-CV, 2000 WL 1156628 (Tenn. Ct. App. Aug. 16, 2000). While we always prefer having a transcript of the underlying proceeding, it is not specifically required; instead, a "record of sufficient completeness" is required. *See **In re Adoption of J.D.W.***, 2000 WL 1156628, at *3 (citing ***M.L.B. v. S.L.J.***, 519 U.S. 102, 128 (1996)). Therefore, the issue here is whether the evidentiary record before this Court, one that is mostly based on a Statement of the Evidence and Mother's deposition testimony, is sufficiently complete to permit this Court to conduct the appropriate review of Appellant's claims in order to preserve his rights to an effective appeal. *See **In re Austin C.***, 2014 WL 4261178, at *5; *see also **In re Adoption of J.D.W.***, 2000 WL 1156628, at *4.

Here, the Statement of the Evidence lists every witness' testimony. Importantly, the Statement of the Evidence details Appellant's testimony about his statutory rape convictions as well as his guilty plea of Especially Aggravated Exploitation of a Minor. Additionally, the statement describes Appellant's testimony that, prior to filing a petition to establish paternity on July 23, 2015, Appellant had never taken any steps to become the biological father of the Child even after he was provided notice that he was the father. Further, the statement indicates that Appellant testified that he has no relationship with the Child and that she does not know him. The Statement of the Evidence also details the testimony of Appellees. Specifically, the statement reflects that Appellees testified that the Child has lived in their home since early January of 2014 and that the Child is happy and well-adjusted in their home. The statement also describes how Appellees are financially stable and able to care for the Child. In addition to the Statement of the Evidence, we also have Mother's full deposition testimony which was admitted into evidence at the trial. This deposition includes specific testimony about Appellant and his rape of Mother. This testimony, along with the thorough Statement of the Evidence, provides us with a sufficient evidentiary record to permit appropriate review by this Court.

## B. Grounds for Termination of Parental Rights

Although only one ground must be proven by clear and convincing evidence in order to terminate a parent's rights, the Tennessee Supreme Court has instructed this Court to review every ground relied upon by the trial court to terminate parental rights in order to prevent "unnecessary remands of cases." *In re Angela E.*, 303 S.W.3d 240, 251 n.14 (Tenn. 2010). Accordingly, we will review all of the foregoing grounds.

### 1. Abandonment

Tennessee Code Annotated Section 36-1-113(g)(1) provides:
(g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:

(1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred;

Tenn. Code Ann. § 36-1-113(g)(1). From the record, we glean that Father was incarcerated from mid-2010 until September of 2016. Because Father was incarcerated at the time the petition to terminate his parental rights was filed on June 20, 2014, the abandonment definition at Tennessee Code Annotated Section 36-1-102(1)(A)(iv) is applicable in this case. *See In re Navada N.*, 498 S.W.3d 579, 598-600 (Tenn. Ct. App. 2016) (describing incarceration within the four months preceding the filing of the termination petition as a "condition precedent" to the application of the abandonment definitions under section 36-1-102(1)(A)(iv)).

Tennessee Code Annotated Section 36-1-102(1)(A)(iv) defines "abandonment," in relevant part as follows:

(1)(A) For purposes of terminating the parental or guardian rights of a parent or parents or a guardian or guardians of a child to that child in order to make that child available for adoption, "abandonment" means that:

\*\*\*

(iv) A parent . . . is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent . . . has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support . . . for four (4)

consecutive months immediately preceding such parent's . . . incarceration, or the parent . . . has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child[.]

Tenn. Code Ann. § 36-1-102(1)(A)(iv).

Here, the trial court's findings of fact and conclusions of law states, in relevant part:

> After careful consideration of the testimony of the parties, witnesses and review of the exhibits and the record, the [c]ourt does find that the [Appellees] have proven by clear and convincing evidence that the [C]hild . . . was abandoned by [Appellant] . . . due to no visitation and no support of the [C]hild **for the four (4) months before the filing of the Petition for Termination and Adoption**, except for token visitation and token support. Further, [Appellant] exhibited a wanton disregard for the welfare of the [C]hild, pursuant to T.C.A. § 36-1-113(1)(A)(iv) due to his actions after the birth and prior to his incarceration.

(Emphasis added). Based on the highlighted language (in the trial court's order), it appears that the trial court applied the wrong statutory definition of abandonment. Tennessee Code Annotated Section 36-1-102(A)(i) does not apply to incarcerated parents. As noted above, Father was incarcerated at the time the petition to terminate his parental rights was filed and, thus, is subject to the abandonment definition set out at Tennessee Code Annotated Section 36-1-102(A)(iv), which requires the trial court to consider support and visitation "for four (4) consecutive months immediately preceding [the parent's] incarceration."

In its order terminating Father's parental rights, we also note that the trial court failed to make a specific finding that Father's failure to visit or support was "willful." The Statement of Evidence indicates that the trial court may have made an oral ruling that Father's behavior was willful, but that ruling is neither incorporated nor set out specifically, in the trial court's written order. "No principle is better known than that which states that a Court speaks through its orders and decrees entered upon the minutes of the Court." *Palmer v. Palmer*, 562 S.W.2d 833, 837 (Tenn. Ct. App. 1977). This Court has held that

> [a] judgment must be reduced to writing in order to be valid. It is inchoate, and has no force whatever, until it has been reduced to writing and entered on the minutes of the court, and is completely within the power of the judge or Chancellor. A judge may modify, reverse, or make any other change in his judgment that he may deem proper, until it is entered on the minutes, and he may then change, modify, vacate or amend it during that term,

- 7 -

unless the term continues longer than thirty days after the entry of the judgment, and then until the end of the thirty days.

*Cunningham v. Cunningham*, No. W2006-02685-COA-R3-CV, 2008 WL 2521425, at *4-5 (Tenn. Ct. App. June 25, 2008) (quoting *Broadway Motor Co., Inc. v. Fire Insurance Co.*, 12 Tenn. App. 278, 280 (1930)); *see also Ragland v. Morrison*, No. W2013-00540-COA-R3-CV, 2013 WL 4805624, at *3 (Tenn. Ct. App. Sept. 10, 2013). Furthermore, Tennessee Rule of Civil Procedure 52.01 states that "[i]n all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." There is no bright-line test by which to assess the sufficiency of factual findings, but "the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue." *Lovlace v. Copley*, 418 S.W.3d 1, 35 (Tenn. 2013). This requirement is not a "mere technicality." *Roney v. Nordhaus*, No. M2014-02496-COA-R3-CV, 2015 WL 9594638, at *1 (Tenn. Ct. App. Dec. 30, 2015); *Hardin v. Hardin*, No. W2012-00273-COA-R3-CV, 2012 WL 6727533, at *3 (Tenn. Ct. App. Dec. 27, 2012). Findings and conclusions facilitate appellate review by affording a reviewing court a clear understanding of the basis of a trial court's decision. *Hardin,* 2012 WL 6727533, at *5; *In re K.H.*, No. W2008-01144-COA-R3-PT, 2009 WL 1362314, at *8 (Tenn. Ct. App. May 15, 2009). "Without such findings and conclusions, this Court is left to wonder on what basis the court reached its ultimate decision." *In re K.H.*, 2009 WL 1362314, at *8.

In the absence of the necessary findings and conclusions regarding whether Father's failure to support or visit was willful, the threshold criterion for application of this ground for termination of parental rights, i.e. willfulness, is not met. Accordingly, we reverse the trial court's order terminating Father's parental rights on the ground of abandonment by willful failure to visit and willful failure to support.

Turning to abandonment by an incarcerated parent by wanton disregard, we first note that Appellees' Amended Petition for Adoption and Termination of Parental Rights did not specifically plead this ground. However, from our review of the Statement of Evidence, and from Father's argument on appeal, it appears that the ground of wanton disregard was tried by consent of the parties. Tenn. R. Civ. P. 15.02 ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings . . . ."). Accordingly, we will address this ground.

In its order terminating Father's parental rights, the trial court made the following findings concerning the ground of abandonment by an incarcerated parent by wanton disregard:

[Father] was convicted of statutory rape of [Mother] and another 14 year-

- 8 -

old female and received two years of probation for the statutory rape convictions. After his conviction, he continued to have communication, including sending inappropriate photos of himself to the mother and eventually was charged in a 30 count indictment for sexual exploitation of a minor and received a sentence of 8 years. He began serving that sentence in April, 2010, and was released in 2016 after serving 6 years of that sentence. He is a registered sexual offender for life.

Concerning what constitutes wanton disregard, for purposes of this ground, this Court has explained that:

> Incarceration alone is not conclusive evidence of wanton conduct prior to incarceration. ***In re Audrey S.***, 182 S.W.3d 838, 866 (Tenn. Ct. App. 2005). Rather, "incarceration serves only as a triggering mechanism that allows the court to take a closer look at the child's situation to determine whether the parental behavior that resulted in incarceration is part of a broader pattern of conduct that renders the parent unfit or poses a risk of substantial harm to the welfare of the child." ***Id.*** The statutory language governing abandonment due to a parent's wanton disregard for the welfare of a child "reflects the commonsense notion that parental incarceration is a strong indicator that there may be problems in the home that threaten the welfare of the child" and recognizes that a "parent's decision to engage in conduct that carries with it the risk of incarceration is itself indicative that the parent may not be fit to care for the child." ***Id.***

***In re C.A.H.***, No. M2009-00769-COA-R3-PT, 2009 WL 5064953, at *5 (Tenn. Ct. App. Dec. 22, 2009). We further note that the ground of abandonment by wanton disregard does not require that the conduct at issue occur within the four month period prior to incarceration. ***In re Audrey S.***, 182 S.W.3d at 865 ("This test has no analog to the first statutory definition of abandonment, and it is not expressly limited to any particular four-month period."). Rather, Tennessee courts may consider the parent's behavior throughout the child's life, even when the child is in utero. *See **In re A.B.***, No. E2016-00504-COA-R3-PT, 2017 WL 111291, at *10 (Tenn. Ct. App. Jan. 11, 2017) ("For a child in utero, we primarily have found wanton disregard where a parent, after learning of the pregnancy, commits the crime for which he or she is subsequently incarcerated."); *but see **In re Anthony R.***, No. M2014-01753-COA-R3-PT, 2015 WL 3611244, at *3 (Tenn. Ct. App. June 9, 2015) (concluding that father's actions that led to his incarceration did not constitute wanton disregard for the child's welfare because father did not know that mother was pregnant with his child). "The actions that our courts have commonly found to constitute wanton disregard reflect a 'me first' attitude involving the intentional performance of illegal or unreasonable acts and indifference to the consequences of the actions for the child." ***In re Anthony R.***, 2015 WL 3611244, at *3.

In its order terminating Father's parental rights, the trial court found, in relevant part that,

> pursuant to T.C.A. § 36-1-113(1)(A)(iv),[3] [Father] has abandoned this child and that his pre incarceration conduct shows a wanton disregard for the child. The [c]ourt recognizes that his incarceration severely compromises his ability to perform his parental duties, however, his decision to engage in conduct that carries with it the risk of incarceration is itself indicative that he is not fit to care for the child. His pattern of behavior, by impregnating a 13 year old girl, and then continuing his pattern of behavior by sending nude photographs of himself and violating the terms of his probation, caused him to serve the entire 8 year sentence. The [c]ourt finds that he abandoned this child by clear and convincing evidence specifically because his conduct displayed a wanton disregard for the welfare of the child.

According to the Statement of the Evidence, Father testified that he began having sex with Mother when she was 13; this resulted in his conviction for statutory rape. The Child was born in December of 2009. Trial exhibits, as well as Father's own testimony, confirm that, in addition to the statutory rape conviction concerning Mother, Father was also convicted of statutory rape of a 14-year old girl. For these charges, he was sentenced to two years' probation in April of 2010. Father admitted that, even after his conviction, he continued to send Mother inappropriate nude photographs of himself; she was 14 years old at the time. This resulted in Father's arrest, on July 28, 2010, on a thirty count indictment. Father pled guilty to Especially Aggravated Exploitation of a Minor on April 11, 2011. Father testified that he served six years of his sentence and was released in early September of 2016. The petition to terminate Father's parental rights was initially filed on June 20, 2014, while Father was incarcerated. The record and Statement of Evidence clearly establishes that Father has engaged in conduct prior to his incarceration that evinces a wanton disregard for the welfare of the Child. Accordingly, we affirm the trial court's order terminating Father's parental rights on the ground of abandonment by an incarcerated parent by wanton disregard.

## 2. Tennessee Code Annotated Section 36-1-113(g)(9)(A)

The trial court also found, by clear and convincing evidence, that Father's parental rights should be terminated pursuant to Tennessee Code Annotated 36-1-113(g)(9)(A), which provides:

---

[3] This Court notes that Tennessee Code Annotated Section 36-1-113(1)(A)(iv) does not exist and believes the trial court intended to terminate Father's parental rights via Tennessee Code Annotated Section 36-1-102(1)(A)(iv) as that section discusses termination of parental rights of an incarcerated parent by wanton disregard.

(9)(A) The parental rights of any person who, at the time of the filing of a petition to terminate the parental rights of such person, or if no such petition is filed, at the time of the filing of a petition to adopt a child, is the putative father of the child may also be terminated based upon any one (1) or more of the following additional grounds:

(i) The person has failed, without good cause or excuse, to pay a reasonable share of prenatal, natal, and postnatal expenses involving the birth of the child in accordance with the person's financial means promptly upon the person's receipt of notice of the child's impending birth;

(ii) The person has failed, without good cause or excuse, to make reasonable and consistent payments for the support of the child in accordance with the child support guidelines promulgated by the department pursuant to § 36-5-101;

(iii) The person has failed to seek reasonable visitation with the child, and if visitation has been granted, has failed to visit altogether, or has engaged in only token visitation, as defined in § 36-1-102(1);

(iv) The person has failed to manifest an ability and willingness to assume legal and physical custody of the child;

(v) Placing custody of the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child; or

(vi) The person has failed to file a petition to establish paternity of the child within thirty (30) days after notice of alleged paternity, or as required in § 36-2-318(j), or after making a claim of paternity pursuant to § 36-1-117(c)(3)[.]

Tenn. Code Ann. § 36-1-113(g)(9)(A). For this ground to apply, Father must be the Child's "putative father," as opposed to her "legal parent." The Tennessee Legislature has defined "putative father" to mean:

. . . a biological or alleged biological father of a child who, at the time of the filing of a petition to terminate the parental rights of such person or, if no such petition is filed, at the time of the filing of a petition to adopt a child, meets at least one (1) of the criteria set out in § 36-1-117(c) and is not a legal parent[.]

- 11 -

Tenn. Code Ann. § 36-1-102(43). Tennessee Code Annotated Section 36-1-117(c) provides that:

(c) The parental rights of the putative father of a child who has not filed a petition to establish paternity of the child or who has not established paternity of the child who is the subject of an adoption proceeding and who meets any of the following criteria shall be terminated by surrender, parental consent, termination of parental rights pursuant to § 36-1-113, or by waiver of interest, before the court may enter an order of adoption concerning that child:

(1) The biological father of a child has filed with the putative father registry, pursuant to § 36-2-318 a statement of an intent to claim paternity of the child at any time prior to or within thirty (30) days after the child's birth and has notified the registry of all address changes;

(2) The biological father has been specifically identified to the petitioners or their attorney, or to the department, the licensed child-placing agency, or the licensed clinical social worker involved in the care, placement, supervision, or study of the child as the child's father by the child's biological mother in a sworn, written statement or by other information that the court determines to be credible and reliable;

(3) The biological father has claimed to the child's biological mother, or to the petitioners or their attorney, or to the department, a licensed child-placing agency, or a licensed clinical social worker who or that is involved in the care, placement, supervision, or study of the child that the biological father believes that the biological father is the father of the child; provided, that if the biological father has previously notified the department of the biological father's claim to paternity of the child pursuant to the provisions of the putative father registry, § 36-2-318(e)(3), the biological father shall be subject to all the requirements for waiver of notice provisions of § 36-2-318(f)(2) and to all requirements for filing a paternity petition;

(4) The biological father is recorded on the child's birth certificate as the father of the child;

(5) The biological father is openly living with the child at the time the adoption proceeding is commenced and is holding himself out as the father of the child; provided that, if custody of the child has been removed from the biological mother by court order, notice shall be

given to any man who was openly living with the child at time of the initiation of the custody or guardianship proceeding that resulted in the removal of the custody or guardianship of the child from the biological mother or biological father, if the man held himself out to be the father of the child at the time of the removal; or

(6) The biological father has entered a permanency plan under the provisions of title 37, chapter 2, part 4, or under similar provisions of any other state or territory in which the biological father acknowledges paternity of the child.

Tenn. Code Ann. § 36-1-117(c). In its Findings of Facts and Conclusions of Law, the trial court found:

[Appellant], Hector [N.], is an alleged father and claims to be the biological father of [the Child]. He filed a request for paternity testing after the commencement of this action when the [C]hild was approximately 5 years old.

At the time of the birth of the [C]hild, the birth mother was 14 years of age. [Appellant] admits that he impregnated the natural mother when she was between 13 and 14 years of age. [Appellant] was 21 at the time the mother became pregnant.

Furthermore, according to the Statement of the Evidence, Father testified that he believes he is the Child's biological father. Additionally, on September 29, 2014, Father filed a Notice of Intent to Claim Paternity or Acknowledgment of Paternity of a Child Born Out-of-Wedlock. Mother's deposition testimony also indicates that she believed Appellant was the Child's father. Therefore, we conclude that Father meets the criteria set forth in Tennessee Code Annotated Sections 36-1-117(c)(2) and (3). As such, the trial court correctly applied the grounds set out in Tennessee Code Annotated Section 36-1-113(g)(9)(A).[4]

---

[4] In his brief, Appellant relies on the Tennessee Supreme Court case *In re Bernard T.*, 319 S.W.3d 586 (Tenn. 2010), in arguing that this ground does not apply to him because it "cannot be used to terminate the rights of a person who is a child's biological parent, legal parent, or putative biological father at the time the termination petition is filed." *Id.* at 599 (citing *In re D.A.H.*, 142 S.W.3d 267, 272-73 (Tenn. 2004). *In re Bernard T.* was decided in August of 2010, which was prior to the Tennessee Legislature's amendment, in late March of 2016, of Tennessee Code Annotated Section 36-1-102. Currently, the language of the statute indicates that a "putative father" can be both a biological and an alleged biological father of a child if he meets one of the criteria set out in Tennessee Code Annotated Section 36-1-117(c) and is not a "legal parent" at the time the petition to terminate his parental rights is filed. Tennessee Code Annotated § 36-1-102(43). The petition to terminate Father's parental rights was filed on June 20, 2014. The record provides that Appellant had not filed a petition to establish paternity and had not established paternity to the Child before June 20, 2014. The Statement of the Evidence

- 13 -

We next turn to whether the record contains clear and convincing evidence to support the trial court's termination of Father's parental rights on the grounds set forth in Tennessee Code Annotated 36-1-113(g)(9)(A). In its Findings of Fact and Conclusions of Law, the trial court found:

> [Appellant] has never filed any documents attempting to establish parentage, pay support or secure visitation with the [C]hild. He has paid no prenatal, [postnatal] or other expenses upon the notice of the [C]hild's impending birth. He has failed to make reasonable and consistent payments for the support of the [C]hild. He has been convicted of rape and other crimes against the Mother of [the Child] and one other female which would pose a risk of substantial harm to the psychological and physical welfare of the [C]hild if the [C]hild were to be placed in his care and he failed to file a petition to establish paternity of the [C]hild within 30 days of notice of alleged paternity of the [C]hild pursuant to Tennessee Code Annotated § 36-1-113(g)(9)(A) et. seq. He was not incarcerated at the time of birth.
>
> ***
>
> Exhibit 5 is a photograph of Mr. [N.] with a child that appears to be three (3) months of age. Mr. [N.] was on notice that the [C]hild could possibly be his from her birth . . . .

In its Findings of Fact and Conclusions of Law, the trial court concluded:

> The [Appellees] have . . . proven by clear and convincing evidence that grounds exist pursuant to T.C.A. § 36-1-113(g)(9)(A) et. seq. [Appellant] has no significant relationship with the [C]hild, failed to pay pre and postnatal expenses, would pose a risk of harm to the [C]hild if she were placed with him, and he failed to file anything to establish himself as the father of the [C]hild.

While the trial court cites the entire section of Tennessee Code Annotated 36-1-113(g)(9)(A), it appears that the trial court made conclusions of law as to only three of

---

indicates that Father testified "he had not filed a petition to establish paternity of the Child after notice was provided to him that he was possibly the Father." Therefore, at the time the petition to terminate his parental rights was filed, Father was an alleged biological father under Tennessee Code Annotated Section 36-1-102(43). Further, for the reasons discussed *supra*, Father meets the criteria set out in Tennessee Code Annotated Section 36-1-117(c)(2) and (3), making him a putative father of the Child. *See In re Jase P.*, No. E2016-02519-COA-R3-PT, 2017 WL 2672781, at *7-8 (Tenn. Ct. App. June 21, 2017), for this Court's discussion regarding the conflict between the newly amended Tennessee Code Annotate Section 36-1-102(43) and *In re Bernard T.*, 319 S.W.3d 586 (Tenn. 2010).

the grounds contained therein. Specifically: (1) that Father has failed, without good cause or excuse, to pay a reasonable share of prenatal, natal, and postnatal expenses involving the birth of the Child in accordance with his financial means promptly upon his receipt of notice of the Child's impending birth; (2) that placing the Child in Father's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the Child; and (3) that Father failed to file a petition to establish paternity of the Child within thirty (30) days after notice of alleged paternity, or as required in § 36-2-318(j), or after making a claim of paternity pursuant to § 36-1-117(c)(3). Tenn. Code Ann. §§ 36-1-113(g)(9)(A)(i), (v), (vi). Therefore, we will analyze only these three grounds.

> The Statement of the Evidence provides the following:
>
> [Appellant] testified that he believed he was the biological father of [the Child]. . . .
>
> ***
>
> [Appellant] testified that he purchased some items after [the Child's] birth including diapers, formula, and toys for the [C]hild between February and April, 2010. He spent approximately $20.00 on those items. He had approximately 2-3 visits with the [C]hild arranged by the maternal grandmother and/or her current husband.
>
> ***
>
> [Appellant] testified he paid no prenatal, natal or [postnatal] [sic] expenses upon the notice of the Mother's pregnancy or the [C]hild's birth . . . .

Although Father admits that he paid no prenatal or postnatal expenses except for some $20.00 in diapers, the trial court failed to make findings as to Father's income or financial condition at the time of the Child's birth so as to show that Father was capable of paying reasonable prenatal or postnatal expenses. Absent a finding that Father had "no good cause or excuse" for failing to pay a reasonable share of prenatal or postnatal expenses, we cannot conclude that there is clear and convincing evidence to support this ground. *See In re F.N.M.*, No. M2015-00519-COA-R3-PT, 2016 WL 3126077, at *9 (Tenn. Ct. App. Apr. 11, 2016) (affirming trial court's termination of putative father's parental rights where father failed to pay any prenatal expenses despite trial court's finding that father was in "good health" and was "a relatively young man at age 33" with "no good cause or excuse for failing to pay a reasonable share of prenatal expenses incurred by [mother] and on behalf of [the child]"). Accordingly, we reverse.

Concerning the trial court's finding that placing the Child in Father's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the Child, the record is clear that Father is a registered sex offender. Father does not dispute that he raped Mother and another minor. According to the Statement of the Evidence:

> [T]hat he is a convicted sex offender for the rape and other crimes against the mother of the [C]hild, and he has no relationship with the [C]hild and the [C]hild does not know him.

Father's history of statutory rape, coupled with the fact that the Child has never lived with Father and does not have a bond with him, supports the trial court's conclusion that removing custody from Appellees and placing the Child with Father will likely cause the Child psychological, and perhaps physical, harm. Accordingly, we affirm the trial court's decision to terminate Father's parental rights on the ground codified at Tennessee Code Annotated Section 36-1-113(g)(9)(A)(v).

Concerning whether Father established paternity within 30 days after notice of alleged paternity, the evidence clearly establishes that he did not. Although Father filed a Notice of Intent to Claim Paternity or Acknowledgment of Paternity of a Child Born Out-of-Wedlock on September 29, 2014, he did not follow through until after the petition to terminate his parental rights was filed. According to the Statement of the Evidence:

> [Appellant] testified that once he found out about this action, he filed a petition to establish paternity on July 23, 2015. Prior to that action, he had never taken any steps to become the biological father of the [C]hild.
>
> ***
>
> [Appellant] testified that he had not filed a petition to establish paternity of the [C]hild after notice was provided to him that he was possibly the Father.

The evidence clearly supports the trial court's finding that Appellant "failed to file a petition to establish paternity of the [C]hild within 30 days of notice of alleged paternity of the [C]hild." The petition is not included in our record; however, even if we allow that Father petitioned for paternity on July 23, 2015, this petition did not satisfy the 30-day time period set out in the statute. Father's petition was filed several years after he knew about the pregnancy and the Child's birth, and several months after he filed the notice of intent to claim paternity. Accordingly, we affirm the trial court's order terminating Father's parental rights on the ground set out at Tennessee Code Annotated Section 36-1-113(g)(9)(A)(vi).

## V. Best Interests

When at least one ground for termination of parental rights has been established, the petitioner must then prove, by clear and convincing evidence, that termination of the parent's rights is in the child's best interest. *White v. Moody*, 171 S.W.3d 187, 192 (Tenn. Ct. App. 1994). When a parent has been found to be unfit (upon establishment of ground(s) for termination of parental rights), the interests of parent and child diverge. *In re Audrey S.*, 182 S.W.3d at 877. The focus shifts to the child's best interest. *Id.* Because not all parental conduct is irredeemable, Tennessee's termination of parental rights statutes recognize the possibility that terminating an unfit parent's parental rights is not always in the child's best interest. *Id.* However, when the interests of the parent and the child conflict, courts are to resolve the conflict in favor of the rights and best interest of the child. Tenn. Code Ann. § 36-1-101(d). Further, "[t]he child's best interest must be viewed from the child's, rather than the parent's, perspective." *Moody*, 171 S.W.3d at 194.

The Tennessee Legislature has codified certain factors that courts should consider in ascertaining the best interest of the child in a termination of parental rights case. These factors include the following:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child[.]

\*\*\*

Tenn. Code Ann. § 36-1-113(i).

This Court has noted that "this list [of factors] is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). Depending on the circumstances of an individual case, the consideration of a single factor or other facts outside the enumerated, statutory factors may dictate the outcome of the best interest analysis. *In re Audrey S.*, 182 S.W.3d at 877. As explained by this Court:

Ascertaining a child's best interests does not call for a rote examination of each of Tenn. Code Ann. § 36-1-113(i)'s nine factors and then a determination of whether the sum of the factors tips in favor of or against the parent. The relevancy and weight to be given each factor depends on the unique facts of each case. Thus, depending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis.

*Moody*, 171 S.W.3d at 194.

Concerning the Child's best interest, the trial court found:

The second prong of the test is whether or not the termination is in the best interest of the [C]hild. Clearly this [C]hild is well adjusted, and has been in a stable home for over two years with [Appellees]. The photographs show she is attached to them and to remove her from this environment would be detrimental to the [C]hild's well-being. Conversely, the [C]hild does not know [Appellant] or his family, and he is a registered sex offender, which causes more issues for him in the future.

[Appellees] are able to financially support the [C]hild and the [c]ourt finds

- 18 -

it is in the [C]hild's best interest for the adoption to be granted . . . .

*\*\**

The [C]hild is happy and well-adjusted and the [Appellees] have provided for all of her care and support since January, 2014, and have been her only caretakers since her natural mother's death.

It is in the best interest of the [C]hild that the adoption be granted and the rights of [Appellant] . . . be terminated and the consent of the biological mother confirmed.

The Statement of the Evidence and the photographic exhibits admitted at trial support the trial court's finding that termination of Appellant's parental rights is in the Child's best interest. The evidence establishes that the Child has lived with Appellees since January of 2014 and has been in the exclusive care of Appellees since Mother died in October of 2014. The Statement of the Evidence further indicates that the Child is well-adjusted and very smart and that it would be emotionally upsetting to the Child to be removed from Appellees' custody. The Statement of the Evidence also indicates that the Child did not know Appellant because he has never been involved in her life. Appellees' friend, Chris L., testified that he witnessed the Child's interaction with Appellees, and the Child appears to be very attached to them. She knows Appellees as "Mom" and "Dad." Furthermore, the photographs, which were admitted into evidence, show that the Child is fully integrated into Appellees' family. Appellees continue to help the Child remember Mother by visiting her gravesite and talking about her. All evidence indicates that the Child is happy and well-adjusted with Appellees. To remove the Child from Appellees and place her with Appellant, a man with whom she has never lived and does not have a relationship, would likely cause the Child emotional harm. Furthermore, Father's history of statutory rape poses a risk of physical harm to the Child. Accordingly, we conclude that the facts, as found by the trial court, are supported by the preponderance of the evidence and clearly and convincingly establish that termination of Father's parental rights is in the Child's best interest.

### VI.    Conclusion

For the foregoing reasons, we reverse the trial court's termination of Father's parental rights on the grounds of abandonment by willful failure to support or visit. We also reverse on the ground set out at Tennessee Code Annotated Section 36-1-113(g)(9)(A)(i). We affirm the termination on the other grounds found by the trial court. We also affirm the finding that termination of Father's parental rights is in the Child's best interest. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to Appellant, Hector N. Because Hector N. is proceeding *in forma pauperis* in this appeal, execution for costs

may issue if necessary.

                                          _____

                                          KENNY ARMSTRONG, JUDGE