IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 2, 2018

**IN RE VICTORIA H.**

**Appeal from the Juvenile Court for Marion County**
**No. 23-112A Ronnie J. T. Blevins, II, Judge**

_____

**No. M2017-01162-COA-R3-PT**

_____

This is a termination of parental rights case. Appellant/Father appeals the trial court's termination of his parental rights on the grounds of: (1) failure to establish/exercise paternity; (2) abandonment by willful failure to support; and (3) abandonment by an incarcerated parent for wanton disregard. Appellant also appeals the trial court's finding that termination of his parental rights is in the child's best interest. Because Appellee Tennessee Department of Children's Services did not meet its burden to show that Father has the ability to pay support, we reverse the trial court's termination of Father's parental rights on the ground of abandonment by willful failure to support. The trial court's order is otherwise affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Reversed in Part, Affirmed in Part, and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and W. NEAL MCBRAYER, J., joined.

Robert Floyd Davis, Winchester, Tennessee, for the appellant, Shaun P.

Herbert H. Slatery, III, Attorney General and Reporter, and Jordan K. Crews, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

**OPINION**

**I. Background**

Appellant Shaun P. ("Father") is the father of the minor child, Victoria H. (the

"Child").[1] In September of 2015, approximately four days before Victoria was born, Jacqueline H. ("Mother") was arrested for manufacturing methamphetamine.[2] Mother tested positive for methamphetamine, and her three older children, who are not the subject of this appeal, were placed in the custody of the Tennessee Department of Children's Services ("DCS," or "Appellee"). When Victoria H. was born, she tested positive for methamphetamine and was placed in the neonatal intensive care unit due to withdrawal symptoms. At trial, the Child's foster mother testified that Victoria continues to suffer the effects of being born addicted to methamphetamine, *see* further discussion *infra*. Before Victoria was released from the hospital, the juvenile court granted temporary custody to DCS. The Child was placed in foster care, and she has lived with the same foster family since that time. On December 10, 2015, the trial court entered an order adjudicating the Child to be dependent and neglected due to neglect and severe child abuse on the part of Mother. Mother is married to Jonathan H.[3]

Father has a long criminal history. In February of 2003, he pled guilty to: (1) four counts of burglary of an automobile; two counts of theft over $1,000; (3) two counts of theft over $500; (4) four counts of theft under $500; and (5) two counts of vandalism under $500. He received an effective sentence of sixteen years and was released from prison in March of 2015, six months before Victoria H. was born. Father was incarcerated again in March of 2016, *see infra.*

After he was released from prison in 2015, Father moved into Mother's home. At trial, Father testified that he was aware that methamphetamine was being manufactured in the home and conceded that "there [were] a lot of drugs coming in and out of the house." At some point, Father learned that Mother was pregnant with Victoria H. There were questions concerning paternity. Father testified that, when the Child was born, Mother was married to Jonathan H., but she was having an affair with another man, whom Father described as a "meth cook." Despite Mother's activities, Father testified that he thought he was Victoria H.'s biological father "from the very beginning." Father further stated that Mother told him, during the pregnancy, that he was the Child's father, *see infra*. Despite his belief that he was the Child's biological father, Appellant did not take action to establish paternity until DCS filed the petition to terminate his parental rights in September of 2016. At that point, Father submitted to DNA testing, which revealed that he was, in fact, the Child's father. On November 10, 2016, the trial court entered an order establishing Appellant as the Victoria's legal father.

---

[1] In cases involving minor children, it is the policy of this Court to redact the parties' names so as to protect their identities.

[2] On December 12, 2016, Mother voluntarily surrendered her parental rights to Victoria H. She is not a party to this appeal.

[3] Jonathan H. is not a party to this appeal.

As mentioned above, Father's criminal activity continued after his initial release from jail in March of 2015. The same month he was released, Father was charged with shoplifting and aggravated stalking of Mother. Father was convicted of shoplifting and phone harassment and received probation for each offense. In March of 2016, Father violated his probation for failure to report and a drug-paraphernalia charge. Father was released from jail in November of 2016. On or about February 12, 2017, Father was incarcerated again for violating his probation by failing to report.

On September 1, 2016,[4] DCS filed its petition to terminate Father's parental rights to Victoria H. As grounds, DCS averred: (1) failure to establish/exercise paternity; (2) abandonment by willful failure to support; and (3) abandonment by an incarcerated parent for wanton disregard. The trial court appointed an attorney to represent Father and a guardian ad litem for the Child. The trial court heard the petition on March 21, 2017. Although Father remained incarcerated at the time of the hearing, he was allowed to attend and testify. By order of May 1, 2017, the trial court terminated Father's parental rights to Victoria H. on the grounds of: (1) failure to establish paternity or exercise paternity pursuant to Tennessee Code Annotated Sections 36-1-113(g)(9)(A); (2) abandonment by willful failure to support pursuant to Tennessee Code Annotated Sections 36-1-113(g)(1) and 36-1-102(1)(A)(iv); and (3) abandonment by an incarcerated parent for wanton disregard pursuant to Tennessee Code Annotated Section 36-1-113(g)(1) and 36-1-102(1)(A)(iv). The trial court also found, by clear and convincing evidence, that termination of Father's parental rights was in the Child's best interest. Father appeals.

## II. Issues

Appellant raises two issues for review, which we restate as follows:

1. Whether there is clear and convincing evidence to support the trial court's termination of Appellant's parental rights on any statutory ground.

2. Whether there is clear and convincing evidence that termination of Appellant's parental rights is in the child's best interest.

## III. Standard of Review

Under both the United States and Tennessee Constitutions, a parent has a fundamental right to the care, custody, and control of his or her child. ***Stanley v. Illinois***,

---

[4] On February 2, 2017, DCS filed an amended petition, adding the additional ground of failure to assume custody or financial responsibility pursuant to Tennessee Code Annotated Section 36-1-113(g)(14). In its order terminating Father's parental rights, the trial court found that this ground was "redundant" and dismissed it. DCS does not appeal this ground.

405 U.S. 645, 651 (1972); **Nash-Putnam v. McCloud**, 921 S.W.2d 170, 174 (Tenn. 1996). Thus, the state may interfere with parental rights only when a compelling interest exists. **Nash-Putnam**, 921 S.W.2d at 174-75 (citing **Santosky v. Kramer**, 455 U.S. 745 (1982)). Our termination statutes identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." **In re W.B**., Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g)). A person seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); **In re D.L.B.**, 118 S.W.3d 360, 367 (Tenn. 2003); **In re Valentine**, 79 S.W.3d 539, 546 (Tenn. 2002).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. **Santosky**, 455 U.S. at 769. Accordingly, both the grounds for termination and that termination of parental rights is in the child's best interest must be established by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c)(1); **In re Valentine**, 79 S.W.3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable ... and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." **In re M.J.B.**, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004), *perm. app. denied* (Tenn. July 12, 2004). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." **Id.** at 653.

In light of the heightened standard of proof in termination of parental rights cases, a reviewing court must modify the customary standard of review in Tennessee Rule of Appellate Procedure 13(d). As to the trial court's findings of fact, our review is *de novo* with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. **Jones v. Garrett**, 92 S.W.3d 835, 838 (Tenn. 2002).

### IV. Grounds for Termination of Parental Rights

As noted earlier, the trial court relied on the following statutory grounds in terminating Appellant's parental rights: (1) failure to establish/exercise paternity; (2) abandonment by willful failure to support; and (3) abandonment by an incarcerated parent for wanton disregard. Although only one ground must be proven by clear and convincing evidence in order to terminate a parent's rights, the Tennessee Supreme Court has instructed this Court to review every ground relied upon by the trial court to terminate parental rights in order to prevent "unnecessary remands of cases." **In re**

- 4 -

*Angela E.*, 303 S.W.3d 240, 251 n.14 (Tenn. 2010). Accordingly, we will review all of the foregoing grounds.

## A. Failure to Establish/Exercise Paternity

Tennessee Code Annotated Section 36-1-113(g)(9)(A) provides, in relevant part:

(9)(A) The parental rights of any person who, at the time of the filing of a petition to terminate the parental rights of such person, . . . is the putative father of the child may also be terminated based upon any one (1) or more of the following additional grounds:

\* \* \*

(iii) The person has failed to seek reasonable visitation with the child . . . .
(iv) The person has failed to manifest an ability and willingness to assume legal and physical custody of the child;
(v) Placing custody of the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child; or
(vi) The person has failed to file a petition to establish paternity of the child within thirty (30) days after notice of alleged paternity, or as required in § 36-2-318(j), or after making a claim of paternity pursuant to § 36-1-117(c)(3)[.]

Tenn. Code Ann. § 36-1-113(g)(9)(A). For purposes of Section 36-1-113(g)(9)(A)(vi), "notice" "means the oral statement to an alleged biological father from a biological mother that the alleged biological father is believed to be the biological father of the biological mother's child." Tenn. Code Ann. § 36-1-113(g)(9)(B)(ii).

The grounds set out in Section 36-1-113(g)(9)(A) are only applicable to putative fathers. As this Court recently explained:

Prior to March 2016, under the previous version of the statute, there was some question regarding whether these additional grounds were applicable to putative fathers. *See* **In re Bernard T.**, 319 S.W.3d 586, 599 (Tenn. 2010) (citing **In re D.A.H.**, 142 S.W.3d 267, 272-73 (Tenn. 2004)) ("The grounds for termination in Tenn. Code Ann. § 36-1-113(g)(9) cannot be used to terminate the rights of a person who is a child's biological parent, legal parent, or putative biological father at the time the termination petition is filed."). *But see* **In re Dixie M.M.**, No. M2012-01226-COA-R3-PT, 2012 WL 4474155, at *8 (Tenn. Ct. App. Sept. 27, 2012) (affirming the trial court's termination of the putative father's parental rights on the ground of

failure to seek reasonable visitation with the child pursuant to Tennessee Code Annotated section 36-1-113(g)(9)(A)(iii)). On March 23, 2016, the legislature amended the wording of the statute to explicitly state that these additional grounds applied to "the putative father of the child." *See* 2016 Pub. Acts, c. 636, § 5, eff. Mar. 23, 2016.

*In re E.C.*, No. E2016-02582-COA-R3-PT, 2017 WL 2438574, at *6 (Tenn. Ct. App. June 6, 2017). Accordingly, in order to determine whether clear and convincing evidence exists to terminate Father's parental rights under section 36-1-113(g)(9)(A), we must first determine whether Father is a putative father. A "putative father" is statutorily defined as follows:

> (43) "Putative father" means a biological or alleged biological father of a child who, at the time of the filing of a petition to terminate the parental rights of such person ... meets at least one (1) of the criteria set out in § 36-1-117(c) and is not a legal parent[.]

Tenn. Code Ann. § 36-1-102(43). In relevant part, Tennessee Code Annotated Section 36-1-117(c), provides:

> (c) The parental rights of the putative father of a child who has not filed a petition to establish paternity of the child or who has not established paternity of the child who is the subject of an adoption proceeding and who meets any of the following criteria shall be terminated by surrender, parental consent, termination of parental rights pursuant to § 36-1-113, or by waiver of interest, before the court may enter an order of adoption concerning that child:
>
> > (1) The biological father of a child has filed with the putative father registry, pursuant to § 36-2-318 a statement of an intent to claim paternity of the child at any time prior to or within thirty (30) days after the child's birth and has notified the registry of all address changes;
> >
> > (2) The biological father has been specifically identified to the petitioners or their attorney, or to the department, the licensed child-placing agency, or the licensed clinical social worker involved in the care, placement, supervision, or study of the child as the child's father by the child's biological mother in a sworn, written statement or by other information that the court determines to be credible and reliable;

(3) The biological father has claimed to the child's biological mother, or to the petitioners or their attorney, or to the department, a licensed child-placing agency, or a licensed clinical social worker who or that is involved in the care, placement, supervision, or study of the child that the biological father believes that the biological father is the father of the child. . . .

(4) The biological father is recorded on the child's birth certificate as the father of the child;

(5) The biological father is openly living with the child at the time the adoption proceeding is commenced and is holding himself out as the father of the child; provided that, if custody of the child has been removed from the biological mother by court order, notice shall be given to any man who was openly living with the child at time of the initiation of the custody or guardianship proceeding that resulted in the removal of the custody or guardianship of the child from the biological mother or biological father, if the man held himself out to be the father of the child at the time of the removal; or

(6) The biological father has entered a permanency plan under the provisions of title 37, chapter 2, part 4, or under similar provisions of any other state or territory in which the biological father acknowledges paternity of the child.

Tenn. Code Ann. § 36-1-117(c).

Here, it is undisputed that Father did not qualify as a legal parent at the time DCS filed the petition to terminate his parental rights on September 1, 2016. A DNA test was not performed until after DCS filed the petition, and Father's paternity was established by order of November 10, 2016. Furthermore, no father is listed on the Child's birth certificate, nor is there evidence that Mother filed a sworn written statement indicating Appellant's paternity. Moreover, there is no evidence that Father: (1) registered with the putative father registry; (2) lived with the Child at any time; or (3) entered into a permanency plan for the Child. As such, Father can only be established as a putative father if he has claimed to be the father pursuant to Tennessee Code Annotated Section 36-1-117(c)(3). Turning to the record, Father testified in relevant part, as follows:

Q. Okay. Now I think you stated that you knew that you were the father of Victoria from the beginning.

A. I felt that way. Yes, sir.

Q. And. In fact, I think you told a detective back in November of 2015 that you were the father, that you knew you were the father.

A. I felt that I was the father. Yes, sir.

Q. Okay. And, in fact, I think when DCS—when the workers from DCS came to visit you when you were incarcerated, you stated that you knew you were the father at that time; is that correct?

A. I told them that I felt that I was the father. I wasn't 100 percent sure.

The foregoing testimony clearly supports a finding that Father told DCS and others that he was Victoria's biological father. As such, under Tennessee Code Annotated Section 36-1-117(c)(3), we conclude that Father is a putative father for purposes of termination of his parental rights under Tennessee Code Annotated Section 36-1-113(g)(9)(A).

We next turn to the question of whether the record contains clear and convincing evidence to support the trial court's termination of Father's parental rights on the grounds set forth in Tennessee Code Annotated 36-1-113(g)(9)(A). In its order terminating Father's parental rights, the trial court found, in relevant part:

> The Court heard testimony from [Father], as well as from DCS representatives. [Father's] testimony was that he was not incarcerated from March 2015 until March 2016. The Court finds that he could have taken action to establish and exercise paternity in that time period. . . . The DCS representative stated that [Appellant] admitted that he was the father of Victoria, and knew all along. This disclosure came when DCS contacted him while he was incarcerated . . . to inquire if he wished to waive his parental interest.
> [Father] testified that he told Detective Chad Pierce, in November of 2015, that he was the father of Victoria. He also testified that he was not sure if he was the father, but admitted upon cross-examination, that at the very least, he knew there was the possibility that he was the father of Victoria.
> He admitted that he did not live with the mother, and that he did not make any payments for support, or help with expenses for the child. He did not seek visitation, or attempt to legitimate the child. The child was not legitimated until DCS approached him to undertake genetic testing.
> Further, due to the extensive criminal history, and lengthy periods of incarceration, it would pose a physical and psychological risk to the child to be placed in the legal and physical custody of [Father].

[Father] willfully did not take steps to establish parentage or exercise parentage, while having the ability to do so during the period of time from March of 2015 through March 2016. Therefore, the ground for termination of parental rights pursuant to TCA 36-1-113(g)(9)(A) . . . is clearly and convincingly met by DCS as a matter of law.

Turning to the record, Appellant testified that, during her pregnancy, Mother told Appellant, "You're the daddy." Appellant went on to state that Mother also told other men that these men were the Child's father. Regardless, by his own testimony, even before Victoria was born, Mother made oral statements to Father that she believed he was the Child's biological father. These statements constitute "notice" under Tennessee Code Annotated Section 36-1-113(g)(9)(B)(ii) for purposes of termination of Appellant's parental rights under Tennessee Code Annotated Section 36-1-113(g)(9)(A)(vi). In short, there is clear and convincing evidence that Appellant "failed to file a petition to establish paternity of the child within thirty (30) days after notice of alleged paternity. . . ." Tenn. Code Ann. § 36-1-113(g)(9)(A)(vi). Furthermore, Father failed to seek visitation with the Child despite the fact that he was not incarcerated for some portion of the first year of her life. Tenn. Code Ann. §36-1-113(g)(9)(A)(iii). Moreover, and for reasons discussed in more detail *infra*, Father's lifestyle and criminal history, coupled with the lack of evidence concerning his ability to establish a suitable home after he is released from jail, support the trial court's finding that placement with Father "would pose a risk of substantial harm to the physical or psychological welfare of the child." Tenn. Code Ann. § 36-1-113(g)(9)(A)(v). From the totality of the circumstances, we conclude that there is clear and convincing evidence to support the trial court's termination of Father's parental rights on this ground.

### B. Abandonment by Willful Failure to Support

The trial court found, by clear and convincing evidence, that Father's parental rights should be terminated on the ground of abandonment by willful failure to support. In pertinent part, Tennessee Code Annotated Section 36-1-113(g) provides:

(g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:

(1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred[.]

Tenn. Code Ann. § 36-1-113(g)(1). Tennessee Code Annotated Section 36-1-102(1)(A) defines "abandonment" as follows:

(1)(A) For purposes of terminating the parental or guardian rights of a parent or parents or a guardian or guardians of a child to that child in order to make that child available for adoption, "abandonment" means that:

\*\*\*

(iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and . . . has willfully failed to . . . support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's . . . incarceration . . . .

Tenn. Code Ann. § 36-1-102(1)(A)(iv). At the time DCS filed its petition to terminate his parental rights on September 1, 2016, Father had been incarcerated for over five months, i.e., since March of 2016. Father was released approximately one month after DCS filed its petition, i.e., November of 2016, but he was remanded to jail in February of 2017. Accordingly, pursuant to the foregoing definition, the relevant time period is from November of 2015 to March of 2016, which is the four month period preceding Father's incarceration prior to the filing of DCS's petition.

In **In re Audrey S.**, this Court discussed willfulness in the context of termination of parental rights cases:

The concept of "willfulness" is at the core of the statutory definition of abandonment. A parent cannot be found to have abandoned a child . . . unless the parent has . . . "willfully" . . . failed to support the child for a period of four consecutive months. . . . In the statutes governing the termination of parental rights, "willfulness" does not require the same standard of culpability as is required by the penal code. Nor does it require malevolence or ill will. Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. Conduct is "willful" if it is the product of free will rather than coercion. Thus, a person acts "willfully" if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing ....

The willfulness of particular conduct depends upon the actor's intent. Intent is seldom capable of direct proof, and triers-of-fact lack the ability to peer into a person's mind to assess intentions or motivations. Accordingly, triers-of-fact must infer intent from the circumstantial

- 10 -

evidence, including a person's actions or conduct.

*In re Audrey S.*, 182 S.W.3d 838, 863-64 (Tenn. Ct. App. 2005) (internal citations and footnotes omitted). This Court has held that failure to pay support is "willful" if the parent "is aware of his or her duty to support, has the capacity to provide the support, makes no attempt to provide support, and has no justifiable excuse for not providing the support." *In re J.J.C.*, 148 S.W.3d 919, 926 (Tenn. Ct. App. 2004) (quoting *In re Adoption of Muir*, No. M2002-02963-COA-R3-CV, 2003 WL 22794524, at *5 (Tenn. Ct. App. Nov. 25, 2003)).

In its order terminating Father's parental rights, the trial court made the following findings concerning the ground of abandonment by willful failure to support:

> The Court finds that [Father] admitted he has never made payments of support, nor paid any expenses . . . . Therefore, the court finds clear and convincingly as a matter of law, that [Father] abandoned the child by failure to support . . . .

Although it is undisputed that Appellant has paid no support for this Child, in order to prove this ground, DCS also has the burden to show that Father had the capacity to provide support. *In re. J.J.C.*, 148 S.W.3d at 926. As this Court recently explained:

> It is axiomatic that "in order to establish the ground of abandonment by willful failure to support by clear and convincing evidence, the party seeking termination must generally 'submit ... evidence regarding [the parent's] employment, income, [or] other non-monetary assets,' as well as the parent's 'expenses during the four-month period.'" *In re Michael B*., No. M2015-02497-COA-R3-PT, 2016 WL 7486361, at *11 (Tenn. Ct. App. Oct. 6, 2016) (quoting *In re Destiny H*., No. W2015-00649-COA-R3-PT, 2016 WL 722143, at *9 (Tenn. Ct. App. Feb. 24, 2016)). Such evidence need not be an accounting of every dollar earned and spent, and it need not even be tied to dollars and cents, but it must be clear and convincing evidence that the parent had the capacity to pay support, did not do so, and had no justification for not doing so. In the case of *In re Adoption of Angela E*., 402 S.W.3d [636,] at 641 [(Tenn. 2013)], in the context of examining whether the father's payments were "token support," our Supreme Court stated that the evidence of the father's income and expenses was "limited at best" and failed to prove that his payments were "token support." *See also In re Michael B.*, 2016 WL 7486361, at *11 (discussing *In re Adoption of Angela E.* and other cases regarding proof of employment, income, other non-monetary assets, and expenses necessary to establish a parent's capacity to pay support).

*In re Preston L*., No. M2016-02338-COA-R3-PT, 2017 WL 4315356, at \*5 (Tenn. Ct. App. September 27, 2017).

Here, the trial court made no finding that Appellant had the ability to pay support. From our review of the record, there is no evidence that Appellant has been legally employed since Victoria was born. Father testified that he is a tattoo and piercing artist, but there is no evidence that he has earned any income from these services. In fact, it appears that, due to his incarceration, Father has no employment history. When questioned about his ability to work, Father stated, in relevant part that, "[a]t this moment in time, I'm not able to work. I'm mentally and physically disabled. I've been in the process of trying to get my disability started." There is no evidence concerning the nature of Father's alleged mental and physical infirmities, nor is there evidence, other than his own testimony, that Father has sought Social Security disability. From the record, we conclude that DCS failed to show that Appellant had the ability to pay support so as to establish that his failure to do so was willful. Accordingly, we reverse the trial court's termination of Father's parental rights on the ground of abandonment by willful failure to support.

## C. Abandonment by and Incarcerated Parent for Wanton Disregard

The trial court also found that Father abandoned the Child by wanton disregard, As defined at Tennessee Code Annotated Section 36-1-102(1)(A)(iv), abandonment, as a ground for termination of a parent's rights, may be established if "the parent . . . has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child." Tenn. Code Ann. § 36-1-102(1)(A)(iv). Although the statute does not define "wanton disregard," this Court has explained that

> [i]ncarceration alone is not conclusive evidence of wanton conduct prior to incarceration. *In re Audrey S.*, 182 S.W.3d 838, 866 (Tenn. Ct. App. 2005). Rather, "incarceration serves only as a triggering mechanism that allows the court to take a closer look at the child's situation to determine whether the parental behavior that resulted in incarceration is part of a broader pattern of conduct that renders the parent unfit or poses a risk of substantial harm to the welfare of the child." *Id*. The statutory language governing abandonment due to a parent's wanton disregard for the welfare of a child "reflects the commonsense notion that parental incarceration is a strong indicator that there may be problems in the home that threaten the welfare of the child" and recognizes that a "parent's decision to engage in conduct that carries with it the risk of incarceration is itself indicative that the parent may not be fit to care for the child." *Id*.

- 12 -

*In re C.A.H.*, No. M2009-00769-COA-R3-PT, 2009 WL 5064953, at *5 (Tenn. Ct. App. Dec. 22, 2009). We further note that the ground of abandonment by wanton disregard does not require that the conduct at issue occur within the four months prior to incarceration. *In re Audrey S.*, 182 S.W.3d at 865 ("This test has no analog to the first statutory definition of abandonment [i.e., abandonment by willful failure to visit or support], and it is not expressly limited to any particular four-month period."). Rather, Tennessee courts may consider the parent's behavior throughout the child's life, even when the child is in utero. *See In re A.B.*, No. E2016-00504-COA-R3-PT, 2017 WL 111291, at *10 (Tenn. Ct. App. Jan. 11, 2017). In short, "[t]he actions that our courts have commonly found to constitute wanton disregard reflect a 'me first' attitude involving the intentional performance of illegal or unreasonable acts and indifference to the consequences of the actions for the child." *In re Anthony R.*, No. M2014-01753-COA-R3-PT, 2015 WL 3611244, at *3 (Tenn. Ct. App. June 9, 2015).

In its order terminating his parental rights, the trial court found, in relevant part, that:

> Evidence of [Father's] criminal convictions was admitted to the Court by evidence introduced into the record as well as through [the] testimony of [Father] [Father] admitted that he has spent thirteen years incarcerated, since 2002. Through his testimony, it was determined that he has spent thirteen of the last fifteen years incarcerated. In fact, he was not incarcerated, per his own admission, from March 2015 until March 2016. Further, the Court takes judicial notice that the case[s] entered into evidence, established his incarceration as early as 1991. He has been incarcerated in multiple counties for multiple offenses.

> \*\*\*

> The Court finds that [Father] has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child.

The evidence supports these findings. Father's criminal record is prolific and runs the gamut from theft to assault. As a result of his continuing criminal activity, he has spent the majority of Victoria's life in jail. Although incarceration, alone, does not prove a parent's wanton disregard for his or her child, *In re Audrey S.*, 182 S.W.3d at 866, in this case, Father's recidivism has resulted in his inability to provide a safe and stable environment for the Child. As discussed above, Father has no employment history and no legal source of income. Although he testified that he is eligible for Social Security disability, his incarceration has kept him from pursuing these payments. Father testified that, when he is released from jail, he will stay in a one-room house on his father's land. He conceded that this living situation is not suitable for the Child but stated that, if he is granted custody, his father will "help" him purchase a trailer home. Father's father did

- 13 -

not testify, and Father's ability to provide a suitable home for the Child is not established in the record. Furthermore, because Father has been incarcerated during most of Victoria's life, he has not visited the Child. The Child does not know him as her father, and there is no evidence that there is any bond between Father and Child. These problems are the direct result of Father's decision to intentionally engage in illegal activity, and they provide clear and convincing proof of Father's wanton disregard for Victoria's welfare. Accordingly, we affirm the trial court's termination of Father's parental rights on this ground.

## V. Best Interest

When at least one ground for termination of parental rights has been established, the petitioner must then prove, by clear and convincing evidence, that termination of the parent's rights is in the child's best interest. *White v. Moody*, 171 S.W.3d 187, 192 (Tenn. Ct. App. 2004). When a parent has been found to be unfit (upon establishment of ground(s) for termination of parental rights), the interests of parent and child diverge. *In re Audrey S.*, 182 S.W.3d at 877. The focus shifts to the child's best interest. *Id.* at 877. Because not all parental conduct is irredeemable, Tennessee's termination of parental rights statutes recognize the possibility that terminating an unfit parent's parental rights is not always in the child's best interest. *Id*. However, when the interests of the parent and the child conflict, courts are to resolve the conflict in favor of the rights and best interest of the child. Tenn. Code Ann. § 36-1-101(d). Further, "[t]he child's best interest must be viewed from the child's, rather than the parent's, perspective." *White*, 171 S.W.3d at 194.

The Tennessee Legislature has codified certain factors that courts should consider in ascertaining the best interest of the child in a termination of parental rights case. As is relevant to the instant case, these factors include, but are not limited to, the following:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

\*\*\*

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

- 14 -

* * *

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

Tenn. Code Ann. §§ 36-1-113(i). This Court has noted that "this list [of factors] is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). Depending on the circumstances of an individual case, the consideration of a single factor or other facts outside the enumerated, statutory factors may dictate the outcome of the best interest analysis. *In re Audrey S.*, 182 S.W.3d at 877. As explained by this Court:

Ascertaining a child's best interests does not call for a rote examination of each of Tenn. Code Ann. §§ 36-1-113(i)'s nine factors and then a determination of whether the sum of the factors tips in favor of or against the parent. The relevancy and weight to be given each factor depends on the unique facts of each case. Thus, depending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis.

*White*, 171 S.W.3d at 194.

In its order terminating Appellant's parental rights, the trial court made the following findings concerning Victoria's best interest:

The Court finds the testimony and evidence presented by [the Child's foster mother] establishes a loving bond between the child and the foster parents. The child is well adjusted, and a disruption of that relationship would be detrimental to the child. The foster parents wish to adopt Victoria, and they can provide financially for her, and give her stability and permanency in a loving home. Therefore, the Court finds clear and convincingly, as a matter of law that it is in the best interest of Victoria H[.], that termination of parental rights pertaining to [Appellant] be granted.

The evidence supports the trial court's findings. As noted above, Victoria is a child with special medical needs. Her foster mother testified that Victoria has respiratory and gastro intestinal issues. As a result, she sees numerous doctors. The foster mother testified that she ensures that Victoria goes to these appointments and follows all of the doctors' instructions. Victoria must take breathing treatments, and the foster mother ensures that

she does so.

Photos, admitted into evidence, show that Victoria's current home is well suited to her needs. In addition, the evidence shows that Victoria has bonded with her foster family. Because Victoria was placed with this family shortly after she was born, her foster parents are the only parents she has known. Given the bond between the Child and the foster parents and the Child's special medical needs, we agree with the trial court that removal from this home would likely cause the Child emotional, psychological, and/or physical detriment. This is especially so in view of Father's incarceration and the lack of evidence concerning his ability to provide a safe and stable home for Victoria. In addition, there is no evidence that Victoria knows Father or that there is any bond between them. Father's recidivism and frequent returns to jail do not bode well for his ability to provide a long-term home for the Child. From the totality of the circumstances, we conclude that there is clear and convincing evidence to support the trial court's finding that termination of Appellant's parental rights is in the Child's best interest.

## VI. Conclusion

For the foregoing reasons, we reverse the trial court's termination of Father's parental rights on the ground of abandonment by willful failure to support. The trial court's order is otherwise affirmed, and the case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellant, Shaun P. Because Shaun P. is proceeding, *in forma pauperis*, in this appeal, execution for costs may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE